No. 82,347

STATE OF KANSAS, *Appellee*, v. EDWARD B. WILKINSON,
*Appellant.*
(9 P.3d 1)

Opinion filed July 14, 2000.

*Brent Getty*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: In this appeal following his pleas to two counts of incest, Edward B. Wilkinson attacks the Kansas Sex Offender Registration Act (KSORA), K.S.A. 22-4901 *et seq.*, on due process grounds and also asserts that the Kansas Bureau of Investigation (KBI) website on sex offenders violates KSORA.

On October 10, 1998, Wilkinson pled no contest to two counts of incest, a severity level 10 person felony, K.S.A. 21-3602. The crimes occurred between June 1, 1996, and April 1, 1997. The

victim, Wilkinson's biological daughter (born 6-20-77), claimed Wilkinson had been engaging with her in sexual activities, including sexual intercourse, anal sex, and oral sex, on a regular basis since she was age 14.

Prior to sentencing, Wilkinson filed a "Motion for Order Rescinding Registration Requirement and/or Public Access to Registration Information due to the Unconstitutionality of K.S.A. 22-4901 *et seq.*, and that Registration Information Not be Published on the Kansas Bureau of Investigation Website." In the motion, Wilkinson argued the registration and public access provisions of KSORA violate due process under the United States and Kansas Constitutions. More specifically, he argued that he had a procedural due process entitlement to a hearing to determine the significance of his threat of reoffense before his registration information was made available to the public, and that KSORA violates due process because it contains no risk assessment mechanism and no graduated system of public access linking registration and public access to the degree of threat presented by the offender. Finally, he argued that the KBI website on sex offenders is not authorized by KSORA.

At sentencing on November 5, 1998, the trial court announced consecutive sentences of 7 months' imprisonment for each conviction and 60 months of postrelease supervision. Because of Wilkinson's category I criminal history, presumptive probation applied and the court granted Wilkinson 24 months' probation to community corrections on each count, with various terms and conditions of probation. In addition, the trial court certified Wilkinson as a sex offender pursuant to K.S.A. 22-4902(b)(12) and informed him of his duty to register as required by KSORA. The trial court denied Wilkinson's motion to rescind the registration and public access requirements of KSORA and also denied his oral motion for a stay of the registration requirement pending an appeal. Wilkinson appeals. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

*Does KSORA violate due process?*

Wilkinson complains that KSORA does not afford him a hearing to determine the degree of threat he poses to the public prior to

requiring him to register and/or prior to permitting the public to have access to his registration information. He asserts this violates procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution and the Kansas Constitution.

*Standard of review*

The constitutionality of KSORA is a question of law, over which we exercise unlimited review. See *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997). The constitutionality of legislative enactments is presumed and all doubts must be resolved in favor of a statute's validity. *State v. Scott*, 265 Kan. 1, 4, 961 P.2d 667 (1998). A statute should not be declared unconstitutional unless the infringement of the superior law is clear beyond a substantial doubt.

*The KSORA*

The KSORA was renamed the "Kansas Offender Registration Act" effective July 1, 1997, when it was expanded to include registration requirements for those who commit certain violent (but not sex-related) offenses and certain other types of offenders. L. 1997, ch. 181, §§ 7-14. Wilkinson's crimes occurred between June 1996 and April 1997, during the period when the versions of KSORA found in the 1995 Furse bound volume and 1996 Supplement were in effect. For purposes of this appeal we will refer to the statutes in issue as KSORA or "the Act."

The Act (both then and now) provides an automatic registration requirement for all sex offenders convicted of a "sexually violent crime" within the meaning of K.S.A. 22-4902(b). See also K.S.A. 22-4905 (requiring those released on probation or to community corrections to be informed of the responsibility to register). Wilkinson's crime of incest is not one of the crimes enumerated by name in K.S.A. 22-4902, but it is deemed a sexually violent crime under K.S.A. 22-4902(a) and (b)(12) because it was found beyond a reasonable doubt to have been sexually motivated. The registration information is forwarded to the KBI, is "open to inspection in the sheriff's office by the public," and is specifically subject to the provisions of the Kansas Open Records Act, K.S.A. 45-215 *et seq.*

K.S.A. 22-4907; K.S.A. 22-4909. The offender must also keep law enforcement informed of any change of address. K.S.A. 22-4904(b).

The 1995 version of the information required to be registered included: name; date of birth; offense or offenses committed, date of conviction or convictions; city or county of conviction or convictions; a photograph; fingerprints; and social security number. K.S.A. 22-4907 (from L. 1993, ch. 253, § 23). Effective July 1, 1996, the registration information must also include: sex and age of the victim; current address; identifying characteristics, such as race and hair color; occupation and name of employer; and drivers license and vehicle information. K.S.A. 1996 Supp. 22-4907 (from L. 1996, ch. 224, § 5). The law was amended again effective July 1, 1997, to also require: documentation of any treatment received for a mental abnormality or personality disorder of the offender; and anticipated future residence. See K.S.A. 1999 Supp. 22-4907(a)(11) and (12) (from L. 1997, ch. 181, § 12).

Under the law in effect at the time Wilkinson committed his crimes:

"Any person required to register as provided in this act shall be required to register: (1) Upon the first conviction of a sexually violent crime, if not confined, for a period of 10 years after conviction, or, if confined, for a period of 10 years after paroled, discharged or released; or (2) upon a second or subsequent conviction for such person's lifetime." K.S.A. 22-4906(a).

Other than specifying what kinds of offenses warrant registration as a sex offender, the Act does not call for further classification or evaluation of particular offenders for purposes of determining whether registration should be required in the first instance or the extent of public access to the registration information. K.S.A. 22-4908 provides the opportunity for a hearing to relieve the offender from the responsibility of further registration, but only after he or she has registered. The version of K.S.A. 22-4908 in effect in 1995 until July 1, 1997, (covering the period during which Wilkinson committed his offenses) provided:

"Any sex offender registered as provided in this act may apply to the court in this state having jurisdiction over the county in which the sex offender resides for an order relieving the sex offender of the duty of registration. The court shall hold

a hearing on the application at which the applicant and any interested persons may present witnesses and other evidence. If, after the hearing, the court finds by a preponderance of the evidence that the sex offender is rehabilitated, the court shall grant an order relieving the offender of the duty of further registration under this act."

This relief statute was amended effective July 1, 1997, to provide that any offender registered as provided in the Act may apply to the sentencing court for an order relieving the offender of the duty of registration,

"except that no offender may apply as provided in this section for an order relieving the offender of the duty of registration until such offender has registered for a period of at least 10 years for each conviction for which an offender must register as provided by this act." K.S.A. 1997 Supp. 22-4908(a).

Under that version in effect starting July 1, 1997, the court shall hold a hearing to consider such application. At the hearing, witnesses and evidence may be presented, and, for sexually violent offenders, the court shall consider a report by a board composed of experts knowledgeable in the field of the behavior and treatment of sex offenders. K.S.A. 1997 Supp. 22-4908(a) and (b). If the court then finds by a preponderance of the evidence that the sex offender is rehabilitated and "does not suffer from a mental abnormality or personality disorder that would make the person likely to engage in a predatory sexually violent crime," the court shall relieve the offender of the duty of further registration. K.S.A. 1997 Supp. 22-4908(b).

*Procedural due process standards*

Under the Fifth and Fourteenth Amendments to the United States Constitution, no state may "deprive any person of life, liberty, or property, without due process of law." Section 18 of the Kansas Constitution Bill of Rights provides that "[a]ll persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Kennedy v. Board of Shawnee County Comm'rs*, 264 Kan. 776, 797-98, 958 P.2d 637 (1998). In reviewing a procedural due

process claim the court must first determine whether a protected liberty or property interest is involved and, if it is, the court must then determine the nature and extent of the process which is due. *Murphy v. Nelson*, 260 Kan. 589, 598, 921 P.2d 1225 (1996). A due process violation can be established only if the claimant is able to establish that he or she was denied a specific procedural protection to which he or she is entitled. The question of the procedural protection that must accompany a deprivation of a particular property right or liberty interest is resolved by a balancing test, weighing (1) the individual interest at stake, (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976); *Murphy*, 260 Kan. at 598-99. The question of what process is due in a given case is a question of law. 260 Kan. 589, Syl. ¶ 2.

*Arguments and analysis*

KSORA's legislative purpose is to protect public safety and, more specifically, to protect the public from sex offenders as a class of criminals who are likely to reoffend. See *Scott*, 265 Kan. at 9-10; *Myers*, 260 Kan. at 679-80. Wilkinson argues that if such is truly the purpose of the Act, then he should have been afforded a pre-registration hearing to determine the likelihood that he would reoffend and whether his registration information should be available to the public.

The State acknowledges that the public disclosure provisions of the Act have been deemed punishment in previous decisions by this court and are therefore only applicable to those who committed their crimes after the effective date of the Act. The State notes that Wilkinson committed his crimes between June 1996 and April 1997, after the effective date of the Act, and was on notice that if he committed a sexually violent offense he would be subject to the registration and public disclosure provisions of the Act. The State asserts that the satisfaction of Wilkinson's due process rights is

inherent in the due process he received incidental to his underlying convictions. The holdings of several cases are relevant to the State's contentions.

In *Myers*, 260 Kan. 669, we addressed an ex post facto challenge to the registration and public access provisions of the Act by a sex offender who had committed his crime prior to the effective date of the Act. The ex post facto prohibition includes laws that change the punishment for a crime or inflict a greater punishment than called for by the law in effect at the time of the offense. We found that the registration requirement imposed no affirmative disability or restraint, and that, while the burden of registering may cause discomfort, the act of registration alone was not punishment. However, we also found that the unlimited public access to the registration information had a punitive effect sufficient to override the nonpunitive legislative purpose so as to make the public access provisions of the Act punishment within the meaning of the Ex Post Facto Clause. Because KSORA's disclosure provision made more burdensome the punishment for a crime after its commission, retroactive application of the disclosure provision to crimes committed before KSORA's enactment violated the prohibition against ex post facto laws. In making this determination, we also stated:

"Public access to sex offender registration is a matter of legislative public policy. Although we defer to the legislature on policy matters, we must, however, exercise our duty of analysis when ex post facto claims impact legislative policy. *Would-be sex offenders have been on notice since April 14, 1994, when KSORA became law, that if they commit certain crimes they will be subject to public disclosure under K.S.A. 22-4909. Myers, whose offense was committed before April 14, 1994, had no such notice.* The significant date in an ex post facto analysis is the date of the offense, not the date of conviction. *Weaver v. Graham*, 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). To avoid the ex post facto characterization, public access should be limited to those with a need to know the information for public safety purposes. This information should be used by those given access to it only for such purposes. As the law is written now, no such measures are in place for Myers." (Emphasis added.) 260 Kan. at 700.

In *Scott*, 265 Kan. 1, Scott had committed his sex offense after enactment of the Act and argued that the public access provisions were cruel and unusual punishment in violation of the United States and Kansas Constitutions. Noting our prior determination

in *Myers* that KSORA's public access provisions had a punitive effect, we found in *Scott* that the threshold requirement of "punishment" was satisfied, and went on to consider whether this "punishment" was cruel and unusual. In doing so, we emphasized that "[i]t is clearly the legislature's role to specify punishment," 265 Kan. at 10, and, after analyzing the law on the subject of cruel and unusual punishment, we stated:

"In light of the foregoing and despite the availability of Scott's registration information imposed by the KSORA, we hold the legislature did not inflict a cruel or unusual punishment upon Scott by permitting public access to his registration information. The legislature has determined it is necessary for public safety to allow the public access to this collected information. *Additionally, offenders have been placed on notice that they would be subject to the public disclosure provisions of the KSORA. Due to the nonpunitive intent and the concern for public safety in the KSORA, as well as the legislature's prerogative to set punishment for criminals, we do not see the public access provisions as so inhumane as to constitute cruel or unusual punishment, particularly where the allegedly injurious consequences of such access are due solely to the offenders' own criminal conduct.*" (Emphasis added.) 265 Kan. at 14-15.

In *State v. Snelling*, 266 Kan. 986, 987-89, 975 P.2d 259 (1999), the State appealed in a case involving a defendant whose sex offense was committed after July 1, 1997. Distinguishing *Scott*, the trial court found the public disclosure provisions of the Act constituted cruel and unusual punishment as applied to Snelling and ordered the public access provisions inapplicable to Snelling. We reversed, holding again that the public access provisions are not cruel and unusual and holding that trial courts have no discretion under the Act to decide whether to apply the public access provisions for those who committed their crimes after the effective date of the Act.

In *State v. Heironimus*, 262 Kan. 796, 941 P.2d 1356 (1997), which the State relies upon by analogy, the defendant, Heironimus, had three prior violations for failing to maintain auto liability insurance. He was automatically declared a habitual violator pursuant to K.S.A. 8-285 based on the three violations. His driving privileges were automatically revoked pursuant to K.S.A. 1996 Supp. 8-286 based on his habitual violator status. Heironimus complained that the habitual violator statutes (HVS) violated due process because

they failed to provide a prerevocation hearing; only a post-revocation hearing was permitted. We found that due process interests were implicated by the loss of Heironimus' driving privileges but found that due process did not require a prerevocation hearing, noting that he "already had the opportunity for a full trial in connection with each of the three offenses before the mandatory provisions of the HVS applied." 262 Kan. at 803. "A hearing . . . was unnecessary to establish what was already clear, that revocation of his license was mandatory. . . . Heironimus had the opportunity for a hearing with each underlying conviction." 262 Kan. at 805. We found the risk of erroneous deprivation slight in view of the limited factual issues (a record of the requisite convictions and the violator's identity) in habitual violator determinations.

The State asserts that Wilkinson received all the process that was required to protect against an erroneous deprivation of his interest in not having his information available to the public. The State argues: Wilkinson was on notice that if he committed a sexually violent crime as defined by KSORA he would be automatically subject to the registration and public access provisions of KSORA; he then committed crimes clearly falling within such a definition; and he was lawfully convicted of those crimes in accordance with due process. A preregistration hearing to determine whether Wilkinson would be likely to reoffend would serve no purpose because the Act does not give judges discretion to relieve offenders of the registration or public access requirements of the Act prior to registration, and, therefore, similar to the circumstances in *Heironimus*, a preregistration hearing would serve little purpose given the mandatory terms of the Act.

This is to be distinguished from the sex offender registration acts of some other states, such as New Jersey and Massachusetts, which, by their terms, call for some additional assessment of the offender's individual characteristics or circumstances in order to determine the degree of public notification. See, *e.g., Doe v. Attorney General*, 430 Mass. 155, 163, 166, 715 N.E.2d 37 (1999) (extending a liberty and privacy interest to a low level risk offender); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995) (discussing New Jersey's 3-tiered protocol for community notification of registered sex offenders, where

administrative assessments of an offender's likelihood of reoffense triggered varying levels of community notification). In both these states an aggressive notification procedure is in place. The Kansas public access provisions are more passive in nature because the Kansas act permits members of the public to *request* information, rather than actively requiring public *notification*.

The Kansas statute does not call for any preregistration individualized assessment of any offender's likely risk of reoffense or any assessment of the degree of public access that should occur, so there is nothing to be determined at a hearing. A similar distinction has been noted by some other courts in finding no procedural due process violations in other state's sex offender registration and notification acts. See *Lanni v. Engler*, 994 F. Supp. 849, 855 (E.D. Mich. 1998); *Patterson v. State*, 985 P.2d 1007, 1017 (Alaska App. 1999); *People v. Logan*, 302 Ill. App. 3d 319, 332-33, 705 N.E.2d 152 (1998); *Com. v. Mountain*, 711 A.2d 473, 478 (Pa. Super. 1998); *State v. Heiskell*, 77 Wash. App. 943, 945-46, 895 P.2d 848 (1995), *rev'd on other grounds*, 129 Wash. 113, 916 P.2d 366 (1996).

Furthermore, insofar as the public access provisions of KSORA are viewed as part of the punishment for the underlying offenses, the following comments from 16A Am. Jur. 2d, Constitutional Law § 563, p. 584, are relevant:

"Every person has a fundamental right to liberty in the sense that the government may not punish him or her unless and until it proves his or her guilt beyond a reasonable doubt at a criminal trial conducted in accordance with relevant constitutional guarantees; however, a person who has been so convicted is eligible for, and a court may impose, whatever punishment is authorized by statute for his or her offense, so long as that penalty is not cruel and unusual and so long as the penalty is not based on some arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. . . . . Individuals may be deprived of life or liberty as punishment for crime . . . . Liberty implies the absence of arbitrary restraint, and not immunity from reasonable regulations and prohibitions imposed in the interests of the community."

Though the public disclosure provisions of KSORA have been deemed punishment, they have been found not to constitute cruel and unusual punishment. And, while we have previously stated in *Scott* that we considered it "troublesome" that KSORA does not

differentiate among different sex offenses in mandating registration and public access, it is also implicit in *Scott* that the registration and public access provisions of KSORA are not considered "arbitrary" punishment. 265 Kan. at 10. As we stated in *Scott*: "It is clearly the legislature's role to specify punishment. [Citation omitted.] The legislature also has the right to determine that sex offenders pose a unique threat to society such that they are subject to registration and public disclosure requirements when other types of offenders are not." 265 Kan. at 10-11.

We agree with the State that the only procedural due process to which Wilkinson was entitled was the process required to convict him of the underlying offenses which triggered this noncruel, nonarbitrary aspect of his "punishment" and the due process necessary to certify his offenses as sexually violent crimes within the terms of the Act (see K.S.A. 22-4902). Assuming no constitutionally deficient procedure in arriving at the conviction and in certifying it as a sexually violent offense under the terms of the Act (neither of which is asserted), there is no risk that the lack of a hearing would lead to an erroneous application of the Act's mandatory requirements. Accordingly, we hold that the registration and public access provisions of the Act do not violate procedural due process.

*Does the KBI website on registered sex offenders violate KSORA?*

Wilkinson also takes issue with the KBI's registered offender internet website which contains the name, last known address, county, race, sex, birth date, date of registration, offense, and photograph of certain registered sex offenders who committed their offenses after April 14, 1994. Under the terms of the Act, the registration information is forwarded to the KBI (K.S.A. 22-4907), is "open to inspection in the sheriff's office by the public" (K.S.A. 22-4909), and is specifically subject to the provisions of the Kansas Open Records Act (K.S.A. 22-4909). Wilkinson asserts that the KBI's maintenance of this information on the internet violates the terms of K.S.A. 22-4909; he asserts the public should only be able to access the information by going to the sheriff's office of a particular county.

At oral argument in this case, Wilkinson's counsel acknowledged that although Wilkinson is registered as required by the Act, the KBI has not placed his name or registration information on their website, apparently because it is KBI's current policy to only place on the website those sex offenders whose crimes are specifically enumerated under K.S.A. 22-4902 and to exclude those offenders who were certified as sexually violent offenders under the catch-all provision of that statute. The State asserts that Wilkinson has no standing to raise this issue because he is not currently on the website. We recognize, however, as in the case of any other registered sex offender, Wilkinson's registration information has been forwarded to the KBI, that Wilkinson is a registered sex offender like the other registered sex offenders on the website, and that the KBI could at any time decide to place Wilkinson and others like him on the website. We therefore deem it appropriate to consider the issue in this appeal.

Determining whether the website violates the terms of KSORA requires interpretation of the Act, which is a question of law over which this court exercises unlimited review. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). The issue raised by Wilkinson was addressed in *State v. Stevens*, 26 Kan. App. 2d 606, 608-09, 992 P.2d 1244 (1999), *rev. denied* 268 Kan. 895 (2000), where the Court of Appeals construed K.S.A. 22-4909 in harmony with the Kansas Open Records Act referenced in that statute and concluded that disclosure on the internet by the KBI was not prohibited by the statute. The Court of Appeals' analysis of this statutory interpretation issue is sound and we adopt it here.

Affirmed.