No. 98,671

STATE OF KANSAS, *Appellant*, v. LARHON COOK, *Appellee.*

(187 P.3d 1283)

Opinion filed July 25, 2008.

*Robbin L. Wasson,* , assistant district attorney, argued the cause, and *Josh Osborn*, legal intern, and *Paul J. Morrison*, attorney general, were with her on the brief for the appellant.

*Janine A. Cox,* of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J: This appeal by the State of Kansas comes before the

court on transfer from the Court of Appeals. The district court dismissed a charge of failure to register as a sex offender, K.S.A. 2006 Supp. 22-4904, against the defendant, Larhon Cook, finding that the charge violated the constitutional prohibition against ex post facto laws.

An understanding of the chronology of the events leading up to this appeal is critical to resolving the question before us. On August 23, 1999, Cook was convicted of aggravated indecent solicitation of a child. Upon his release from incarceration on September 2, 2005, he completed a sex offender registration form, listing an address at 1604 North 44th Street, Kansas City, Kansas. He filed no additional registration forms after completing the initial form. On December 30, 2005, he was arrested for a domestic battery occurring at 208 New Jersey Street, Kansas City, Kansas. On January 3, 2006, the Kansas Bureau of Investigation sent Cook a registered letter at the address he provided on the registration form. The letter was returned on January 9, 2006, marked "return to sender" and "moved left no address."

Effective July 1, 2006, the Kansas Legislature changed violation of the registration statute from a severity-level 10 nonperson felony to a severity level 5 person felony. L. 2006, ch. 212, sec. 20.

On October 26, 2006, Wyandotte County Sheriff's deputies attempted to find Cook at both the North 44th Street and the New Jersey Street addresses. Neighbors told the deputies that Cook no longer lived at either address. On October 31, 2006, the State submitted an affidavit requesting an arrest warrant, and on November 21, 2006, the State filed an information charging Cook with one count of failing to register his address change with the Wyandotte County Sheriff's Department, in violation of K.S.A. 2006 Supp. 22-4904(b), which the information characterized as a severity level 5 person felony.

Cook filed a motion to dismiss or, in the alternative, to quash the information and warrant. The district court entered an order finding that K.S.A. 2006 Supp. 22-4903, as applied to this case, violated the constitutional prohibition against ex post facto laws. The court ordered Cook tried for a severity level 10 felony instead of a severity level 5 felony. After denying the State's motion to

reconsider, the court dismissed the charge in its entirety. The State took a timely appeal, which was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

## ANALYSIS

### Standard of Review

When the application of a statute is challenged on constitutional grounds, this court exercises an unlimited, de novo standard of review. *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997). We presume that legislative enactments are constitutional and resolve all doubts in favor of a statute's validity. *State v. Wilkinson*, 269 Kan. 603, 606, 9 P.3d 1 (2000). We will not declare a statute unconstitutional as applied unless it is clear beyond a reasonable doubt that the statute infringes on constitutionally protected rights. See 269 Kan. at 606.

### The Statutes

The Kansas Legislature created the Habitual Sex Offender Registration Act in 1993. L. 1993, ch. 253, secs. 17-20, originally codified as K.S.A. 1993 Supp. 22-4901 *et seq.* The Act originally provided for compulsory registration of habitual violent sex offenders and made violations of the Act class A nonperson misdemeanors. The Act has been amended a number of times in subsequent legislative sessions. In 1997, the legislature changed the name to the Kansas Offender Registration Act. L. 1997, ch. 181, sec. 7. In 1999, the legislature increased the penalty for violating the Act to a severity level 10 nonperson felony. L. 1999, ch. 164, sec. 30.

In 2006, the legislature amended the Act in two ways that are significant to this appeal. The legislature raised the severity level to a severity level 5 person felony. K.S.A. 2006 Supp. 22-4903. The legislature also provided that a new crime was committed for every 30 days that no registration was filed, adding the following language to the statute:

"Any violation of any provision of [the Kansas Offender Registration Act], including a violation of the duties set forth in K.S.A. 22-4904 through K.S.A. 22-4907, and amendments thereto, which continues for more than 30 consecutive days shall, upon the 31st consecutive day, constitute a new and separate offense and shall continue to constitute a new and separate offense upon completion of every

30 days thereafter for as long as the offense continues." K.S.A. 2006 Supp. 22-4903(a).

These amendments became effective on July 1, 2006. L. 2006, ch. 212, secs. 20, 26.

In both the earlier and amended versions of the Act, a person subject to the Act was required to provide written notification of any change in residential address within 10 days of the address change. See K.S.A. 22-4904(b)(1) (Furse 1995); K.S.A. 2006 Supp. 22-4904(b). The Act also provided that the Kansas Bureau of Investigation was to mail a verification form to the last reported address of the person, who was to fill in the address and other information and return the form to the KBI within 10 days of receiving the form. K.S.A. 2006 Supp. 22-4904(c).

*Constitutional Challenges to the Kansas Offender Registration Act*

This appeal is the latest of a series of cases in which parties have challenged the constitutionality of the Kansas Offender Registration Act as it applied to them.

In *Myers*, 260 Kan. 669, this court ruled that the offender registration act is remedial in nature and does not violate the constitutional prohibition against ex post facto laws. The court found that the Act's public-disclosure requirements, however, are punitive and may not be applied retroactively. 260 Kan. at 671, 699-70. In *State v. Hemby*, 264 Kan. 542, 554-56, 957 P.2d 428 (1998), the court considered whether application of the Act to offenders who committed their crimes before the effective date of the Act violated the ex post facto prohibition. The court reaffirmed the *Myers* holdings that registration is not punitive and creates no ex post facto conflict. In *State v. Scott*, 265 Kan. 1, Syl. ¶ 4, 961 P.2d 667 (1998), and *State v. Snelling*, 266 Kan. 986, Syl. ¶ 1, 975 P.2d 259 (1999), the court upheld the Act against constitutional challenges relating to cruel and unusual punishment. In *Wilkinson*, 269 Kan. 603, Syl. ¶ ¶ 8, 9, this court found no due process violation in a registration requirement that does not allow a hearing to determine the degree of threat posed by the defendant.

In *State v. Armbrust*, 274 Kan. 1089, 59 P.3d 1000 (2002), we considered a situation in which defendants who failed to register

with law enforcement entities were convicted of underlying sex offenses committed when violating the registration act was a misdemeanor. Following amendments to the Act, the State charged the defendants with severity level 10 felonies. The district court dismissed the charges as contravening the Ex Post Facto Clause. We found no constitutional violation in the charges, because the crime at hand—failure to register as a sex offender—was committed after the statutory amendments. 274 Kan. at 1094. We relied on *United States v. Allen*, 886 F.2d 143, 146 (8th Cir. 1989), for the proposition that if the actual crime for which a defendant is being sentenced was committed after the effective date of the new statute, there is no ex post facto violation. 274 Kan. at 1093.

### The Prohibition Against Ex Post Facto Penalties

Cook argued, and the district court agreed, that prosecuting him for a severity level 5 offense violated the prohibition against ex post facto laws.

The United States Constitution provides: "No State shall . . . pass any . . . ex post facto Law." U.S. Const. Art. I, § 10, cl. 1; see also U.S. Const. Art. I, § 9, cl. 3 (prohibiting Congress from passing ex post facto laws).

The framers of the United States Constitution had three purposes in prohibiting retroactive application of laws. First, they sought to assure that legislative acts give fair warning of their effect and permit individuals to rely on those acts until they are explicitly changed. Second, they sought to restrict governmental power by restraining arbitrary and potentially vindictive legislation. Finally, they sought to uphold the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal laws. *Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).

"[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. [Citations omitted.]" *Weaver*, 450 U.S. at 29.

Not only the retroactive criminalization of an act but also the retroactive increase in the severity of punishment may violate ex post facto prohibitions. "The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" after the fact. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 397, 1 L. Ed. 648 (1798). "An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed." *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 138, 3 L. Ed. 162 (1810). "Critical to relief under the Ex Post Facto Clause is . . . the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was pre-scribed when the crime was consummated." *Weaver*, 450 U.S. at 30.

In the present case, if we construe the facts liberally in favor of the State, Cook was in violation of the registration requirement by January 2006, when the KBI letter was returned unopened, and perhaps earlier. On the surface, it appears it would violate the Ex Post Facto Clause to apply a more severe sentence to him than was in effect at the time he first committed the crime of failure to register.

The State argues, however, that the crime of failing to register constitutes a continuing violation—Cook did not complete the crime at a discrete time but continued to commit the crime every day that he failed to comply with the registration statute.

## Cases From Other Jurisdictions On Continuing Crimes

We may find guidance in determining whether a crime has a continuing quality from cases in other jurisdictions. These cases have analyzed the issue in light of two considerations—statutes of limitations and the Ex Post Facto Clause, especially with respect to applying federal sentencing guidelines.

In *United States v. Bailey*, 444 U.S. 394, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980), the Court considered whether escape from cus-tody is a continuing offense for statute of limitation purposes. The Court found that the escapee is liable for not only the initial de-parture but also for failure to return to custody, and the offense therefore continues during the entire time that the escapee is at

large. 444 U.S. at 413. The Court also considered the "continuing threat to society" posed by an escaped prisoner. 444 U.S. at 413. The absence of any reference to a continuing offense in the indictment was not fatal to the charges because an indictment need only contain the elements of the offense, fairly inform the defendant of the charges, and enable the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. 444 U.S. at 414.

In *United States v. Lennon*, 372 F.3d 535 (3d Cir. 2004), the court considered a situation in which the defendant, a foreign national, illegally entered the United States in August 1994. She was convicted of various minor offenses in 1996 and 1998. Immigration officials received an anonymous tip and apprehended her on July 7, 2001. She was indicted for, and pled guilty to, being "found in the United States, having knowingly and unlawfully re-entered the United States" in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The Government contended that "being found" was a continuing violation that commenced with illegal entry into this country and ran through the defendant's apprehension. The defendant argued that the 1993 Sentencing Guidelines should apply instead of the 2001 Sentencing Guidelines because she committed the crime of being found in the United States upon her illegal entry in 1994. She argued that application of the later Guidelines, adopted after she initially committed her crime, violated the constitutional prohibition against ex post facto laws. The defendant also argued that the indictment ambiguously charged her with illegally entering the United States, a crime that she committed one time, in 1994. Relying on *United States v. DiSantillo*, 615 F.2d 128 (3d Cir. 1980), the court found that it was not the fact of the alien's illegal presence in the United States that determined the date on which the crime occurred, but rather the date on which the alien's presence came to the affirmative attention of immigration officials. 372 F.3d at 541. Because she was apprehended in 2001, application of the 2001 Guidelines did not violate ex post facto prohibitions. 372 F.3d at 541.

In *United States v. Erhart*, 415 F.3d 965 (8th Cir. 2004), the defendant was convicted on a variety of fraud related charges, as

well as on drug and gun charges. The indictment stated that the crimes occurred " '[f]rom in or about January 1996 to in or about April 2001.' " 415 F.3d at 973. The Mandatory Victims Restitution Act (MVRA), on which part of his sentence was based, became effective on April 24, 1996. He argued that application of the Act to his case violated ex post facto prohibitions because the indictment specified a date prior to the disadvantageous provisions of the Restitution Act. The court rejected this argument:

"Erhart is not eligible for ex post facto shelter. Erhart conducted his fraudulent business for approximately five years *after* the MVRA was enacted. He was not prejudiced by a statutory change that occurred after he first committed his crime because he continued to commit the crime for several years after the enactment of the MVRA." 415 F.3d at 973.

In *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989), *cert. denied* 495 U.S. 930 (1990), the defendant was indicted in July 1986 and was released on an appearance bond on August 7, 1986. The defendant elected not to appear for sentencing on June 3, 1987, and he was indicted for failure to appear. He was arrested on December 8, 1987. The Sentencing Guidelines Act applied to crimes initiated before November 1, 1987, but not completed until after November 1, 1987. The defendant argued that the Guidelines should apply to him because failure to appear is a continuing offense. The court found that failure to appear is a continuing offense because the statute of limitations is tolled for any person fleeing from justice and because a person who fails to appear for sentencing presents a threat to society analogous to that posed by an escaped prisoner and poses a threat to the integrity and authority of the court. 876 F.2d at 1419.

See also *United States v. Vaughn*, 433 F.3d 917, 921-23 (7th Cir. 2006) (when conspiracy began before Sentencing Guidelines were enacted, Guidelines applied to conviction after Guidelines were enacted because crime continued until defendant withdrew from conspiracy, even though he took part in no overt acts furthering conspiracy after Guidelines were enacted); *United States v. Olis*, 429 F.3d 540, 544-45 (5th Cir. 2005) (conspiracy is continuing offense; so long as evidence shows conspiracy continued after effective date of amendments to Sentencing Guidelines, no ex post

facto violation unless conspirator withdraws from conspiracy before amendments, even if he did not commit acts in furtherance of conspiracy after amendments); *United States v. Butler*, 954 F.2d 114, 120-21 (2d Cir. 1992) (Sentencing Guidelines properly applied to RICO conviction where defendant's pattern of racketeering activity supporting RICO conviction was conducted both before and after amendment date); *United States v. Thomas*, 895 F.2d 51, 57-58 (1st Cir. 1990) (Sentencing Guidelines apply to drug conspiracy beginning before effective date of Guidelines and concluding after effective date).

*Application of Ex Post Facto Analysis to Cook*

It appears that Cook's criminal failure to register began in late 2005 or early 2006, when he changed his place of residence without registering his new address. His residence continued to be unknown after the 2006 amendments became law. Although the supporting affidavit made reference to an address change that took place before the 2006 amendments became effective, that portion of the affidavit was not the sole basis of the charging instrument. The State did not have the opportunity to present evidence relating to Cook's addresses and whether he was properly registered after July 1, 2006.

His situation is comparable to that of the fugitive, which was addressed in *Bailey*, 444 U.S. 394. In *Bailey,* the Court considered the "continuing threat to society" posed by an escaped prisoner, which rendered the crime ongoing in nature. 444 U.S. at 413. In *Wilkinson*, 269 Kan. at 609, this court found that the registration act was intended to promote public safety and to protect the public from sex offenders, who constitute a class of criminals that is likely to reoffend. The constant danger that Cook posed to the community through his failure to register made any crime that began before the 2006 amendments continue after those amendments.

The increase in the penalty was not, however, the only change that the legislature made to the Kansas Offender Registration Act. The 2006 amendments also made each failure to register over a period of 30 days a new felony. Every 30 days after July 1, 2006, Cook committed a new crime by his failure to register. Based on

an investigation by the Wyandotte County Sheriff's Department in October 2006 (after the amendment became effective) that determined that Cook was not residing at either the North 44th Street or the New Jersey Street addresses, the State charged Cook in November 2006 with a single count of failure to register. A separate investigation took place, and an affidavit and information were filed and proceedings commenced based on conduct that occurred after July 1, 2006. It appears that at the time he was charged in November 2006, Cook may have accumulated four separate violations of the amended registration act, all separate and distinct from any conduct Cook engaged in prior to the enactment of the 2006 amendments. Thus, we need not consider and may disregard the events that took place before the amendments. This conclusion is consistent with *Armbrust*, 274 Kan. at 1093—if the actual crime for which a defendant is being sentenced was committed after the effective date of the new statute, there is no ex post facto violation.

The amendments became effective on July 1, 2006. Citizens are presumed to know that the legislature has made certain conduct illegal. See *Cheek v. United States*, 498 U.S. 192, 199, 112 L. Ed. 2d 617, 111 S. Ct. 604 (1991) (every person is presumed to know the law); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 536, 646 P.2d 1091 (1982) (ignorance of law no excuse for violating law); *State v. Young*, 228 Kan. 355, 360, 614 P.2d 441 (1980) (all persons are presumed to know general public laws of state where they reside, as well as legal effects of their acts). Cook had notice that each failure to register over a 30-day period constituted a new crime. In addition, he was already aware under the pre-amendment version of the statute that he had a duty to register; it can scarcely be said that the new version of the law came as a bolt out of the blue.

Subjecting Cook to punishment under the new statute would not violate the notice principle articulated in *Weaver*, that the lack of fair notice and governmental restraint is the critical factor in granting relief under the Ex Post Facto Clause. See 450 U.S. at 30. Under a due process analysis, it is a basic principle that a criminal statute must give fair warning that it is criminalizing certain conduct. *Rogers v. Tennessee*, 532 U.S. 451, 457, 149 L. Ed. 2d

697, 121 S. Ct. 1693 (2001). Cook had fair warning that he was engaging in illegal conduct after the 2006 amendments, and the principles underlying the Ex Post Facto Clause do not apply to protect his failure to register after the amendments became effective.

Cook argues on appeal that it would be unfair for the State to wait to charge someone guilty of a lesser crime until the legislature increases the penalty for that crime. His reasoning would appear to require the State to charge every defendant as soon as it becomes aware of criminal activity. If a sting operation were to turn up evidence that someone was smoking marijuana, the State would not be permitted to wait to acquire additional evidence showing that the individual was also dealing in heroin. In this instance, it does not violate principles of fairness for the State to delay charging an individual who continues to commit a crime or commits new crimes over a period of many months.

We find no violation of ex post facto prohibitions. The order of the district court dismissing the charge is reversed. The case is remanded to the district court to reinstate the charge of failure to register as a sex offender pursuant to K.S.A. 2006 Supp. 22-4903.

Reversed and remanded with directions.