NOT DESIGNATED FOR PUBLICATION

Nos. 128,385
128,386
128,387

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KELINN MYCAL SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID DAHL, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed in part, vacated in part, and remanded with directions.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

MALONE, J.: Kelinn Mycal Smith appeals the district court's order revoking his probations and imposing the underlying sentences in three cases consolidated on appeal. Smith claims the district court abused its discretion by revoking his probations and imposing the underlying sentences without modification. He also claims he is entitled to a recalculation of jail credit awarded in each case due to recent changes in the law pending his appeal. After thoroughly reviewing the record, we affirm the district court's decision

1

to revoke Smith's probations and impose the underlying sentences but remand with directions for a recalculation of the jail credit awarded in each case.

*Factual and procedural background*

This case arises from three separate cases below. In case No. 21-CR-2148 (Case 1) the State charged Smith with one count of criminal possession of a weapon by a convicted felon for conduct occurring on or about May 26, 2021. The State charged Smith in case No. 21-CR-2570 (Case 2) with one count each of aggravated burglary, criminal threat, criminal damage to property, and battery—each for conduct occurring on or about December 17, 2021. The State charged Smith in case No. 22-CR-61 (Case 3) with one count each of criminal threat, criminal damage to property, and battery for conduct occurring on or about January 13, 2022.

The parties entered into a global plea agreement in which Smith agreed to plead guilty as charged in exchange for the State's sentencing recommendations including a recommendation for dispositional departure sentences. The district court held a joint plea hearing and accepted Smith's pleas. Smith moved for a dispositional or durational departure sentence in each case.

The district court held a joint sentencing hearing on June 22, 2023. The district court sentenced Smith to a controlling term of 21 months' imprisonment in Case 1, a controlling term of 162 months' imprisonment in Case 2, and a controlling term of 16 months' imprisonment in Case 3. The district court ordered the sentences to run consecutive for an aggregate sentence of 199 months' imprisonment with 12 months' postrelease supervision. The district court granted the dispositional departure motions and placed Smith on probation in each case. Because Smith was granted probation, none of the original journal entries of judgment included jail credit calculations.

On July 26, 2023, Smith signed a waiver of rights and consent form in which he admitted to testing positive for alcohol and cocaine and consented to serve a 72-hour jail sanction. Smith signed another waiver of rights and consent form on April 19, 2024, in which he admitted to testing positive for marijuana and consented to serving another 72-hour jail sanction. The district court issued an arrest warrant on July 18, 2024, alleging that Smith committed battery domestic violence and destruction of property; that he drove 108 miles per hour in a 75 mile per hour zone; and that he drove on a suspended license, engaged in assaultive behavior, and consumed alcohol.

The district court held a joint probation violation hearing on October 23, 2024. The State called Dallas Gilmore, a master trooper with the Kansas Highway Patrol, to testify. On October 20, 2023, Gilmore stopped Smith's vehicle on the Kansas Turnpike after radar showed Smith driving at 108 miles per hour. Smith did not have a driver's license. Gilmore checked the status of Smith's driver's license and found it suspended. Gilmore ticketed Smith for speeding and driving with a suspended license.

Nancy Browning, Smith's ex-girlfriend, testified next. On July 17, 2024, Browning and Smith argued in Browning's apartment over a missing bottle of champagne. Browning believed Smith drank the champagne. The argument turned physical and Smith pushed Browning out the front door of the apartment, scratching Browning's arm in the process. Browning called the police from her car, and when an officer arrived, Browning went back to the apartment and found the living room had been damaged.

The State next called Timothy Newell, an officer with the Wichita Police Department. Newell responded to Browning's call and when he arrived, he found Browning in her car and Smith "near the entrance on foot" and the two "were having some kind of verbal argument." After Browning and Smith calmed down, Newell talked to Smith who described that Browning was upset because Smith opened "some kind of alcoholic bottle." Newell believed Smith was intoxicated based on an odor of alcohol on

his breath. Smith told Newell that he drank some of the bottle of alcohol and poured the rest down the drain. Smith admitted to Newell that he pushed Browning out of the bedroom and then the apartment during the argument.

Erin Tialengko, another police officer for the City of Wichita, testified. Tialengko also responded to Browning's call and found Smith screaming at Browning and eventually had to threaten Smith with a taser "in order to gain compliance." Tialengko accompanied Browning to the apartment and found the inside "trashed" and described that the "tables and TVs were flipped" and some photographs had been thrown at the wall. Tialengko identified that Browning had hurt her left arm and that Browning disclosed that the injury occurred while Smith pushed her out of the living room.

The State rested, as did the defense without presenting any evidence. After hearing arguments from the parties as to whether Smith violated the terms of his probations, the district court found that Smith violated the terms by driving 108 miles per hour in a 75 miles per hour zone, committing domestic violence battery, and for consuming alcohol.

As to disposition, the State recommended the district court revoke Smith's probations and impose the underlying sentences. Smith argued for an extension of his probation. Alternatively, he argued for sentence modification. The district court revoked Smith's probations and imposed the underlying sentences without modification. The district court addressed how it had departed from presumptive prison sentences in all three cases in favor of probation. The district judge continued that

> "it is now at the point where I have an obligation to you and I have an obligation to
> society, and I put that obligation to society way, way back on the back burner, and now
> it's time for me to recognize that responsibility to society and to revoke and impose. It's
> not appropriate to continue to keep you on probation, in my opinion, at all. The evidence
> is very strong, sadly, against you."

4

The district court did not address jail credit at the hearing. The Case 1 journal entry showed Smith was awarded 112 days of jail credit and not awarded 4 days. The Case 2 journal entry showed Smith was awarded 411 days of jail credit and not awarded 145 days. The Case 3 journal entry showed Smith was awarded 1 day of jail credit and not awarded 546 days. All three journal entries had notes stating that the jail credit not awarded was because Smith was being held in various other cases and not exclusively for Cases 1, 2, or 3, respectively. Smith timely appealed the district court's judgment in all three cases. The cases have been consolidated on appeal.

*Did the district court abuse its discretion by revoking Smith's probations and imposing the original sentences?*

Smith first claims the district court abused its discretion by revoking his probation and imposing the original sentences. The State responds that the district court properly exercised its discretion based on the evidence presented at the hearing.

The procedure for revoking probation is governed by K.S.A. 22-3716. Once a probation violation is established, a district court has discretion to revoke probation and impose the original sentence unless otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). An appellate court reviews a district court's revocation of probation for an abuse of discretion. 315 Kan. at 328. "A district court abuses its discretion if no reasonable person could agree with its decision or if its exercise of discretion is founded on a factual or legal error." *State v. Butler*, 315 Kan. 18, Syl. ¶ 1, 503 P.3d 239 (2022). The party asserting the district court abused its discretion bears the burden of showing it. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

Smith does not challenge the sufficiency of the State's evidence to establish the probation violations. He only argues that the district court should have reinstated and extended his probations rather than revoking and imposing the original sentences. There

is no question the district court was authorized to revoke Smith's probations because the court originally granted dispositional departures. See K.S.A. 22-3716(c)(7)(B). Likewise, the district court was authorized to revoke the probations because Smith committed new crimes while on probation. See K.S.A. 22-3716(c)(7)(C). Smith does not argue that the district court's decision to revoke his probations was founded on any factual or legal error. He only argues that no reasonable person would agree with the decision.

Smith provides a long list of reasons why the district court should have imposed intermediate sanctions or modified his sentences: (1) he recognized he made mistakes while on probation, (2) he waived his right to a hearing twice for the positive drug tests, (3) he remained law abiding before being ticketed for speeding, (4) he told the district court that he wished he had handled the altercation with Browing differently, (5) he never intended to cause the scratch on Browning's arm, (6) Browning may have hit Smith with her car, (7) he was involved in his community by teaching at-risk youth to play drums, (8) he had a job and housing lined up, (9) he had a plan for how to succeed during the rest of his probation term, (10) he complied with the gang conditions of his probation, and (11) he was willing to remain incarcerated until a residential bed became available.

The district court considered the multiple opportunities it had granted Smith, beginning with its grant of dispositional departure sentences and through two different probation violations, and it found that after Smith squandered those opportunities, the best course was to revoke his probations and impose the original sentences. That decision was logical where Smith showed an inability to stay away from drugs, alcohol, or violence. Put another way, Smith did little to show that his troubling pattern of conduct would change with another chance on probation. Most significantly, Smith failed to refrain from violating the law. Under those circumstances, we cannot say that no reasonable person would have agreed with the district court's decision to revoke Smith's probations. As for denying Smith's request for a sentence modification, we also review that decision for an abuse of discretion. *State v. Reeves*, 54 Kan. App. 2d 644, Syl. ¶ 3,

403 P.3d 655 (2017). For the same reasons the district court was justified in revoking Smith's probations, we cannot say that no reasonable person would agree with the district court's decision to deny a sentence modification. Smith has failed to show the district court abused its discretion by revoking his probations and imposing the original sentences.

*Did the district court err in denying duplicative jail credit?*

Smith next claims he is entitled to additional jail credit in each case because of our Supreme Court's recent decision in *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025), which was decided during the pendency of Smith's appeal. The State argues that Smith is not entitled to the application of *Ervin* because his probations were revoked and his jail credit was calculated after the effective date of the 2024 statutory amendment to K.S.A. 21-6615(a) addressing jail credit. The State also argues that *Ervin* was wrongly decided.

Smith did not raise this issue in district court. He argues that we should address the issue because it involves a question of law arising from proved or admitted facts and is determinative of the case and also because consideration of the issue is necessary to serve the ends of justice or to prevent denial of fundamental rights. The State does not address preservation. We observe that *Ervin* was decided while Smith's appeal was pending. We also observe that other panels of this court have considered jail-credit challenges for the first time on appeal because they involve only a question of law on undisputed facts. See, e.g., *State v. Brown*, 65 Kan. App. 2d 663, 671, 570 P.3d 1278, *rev. denied* 321 Kan. 791 (2025). Following that lead, we will address the merits of Smith's claim.

Resolution of this issue requires interpretation of the jail credit provisions in K.S.A. 21-6615. Statutory interpretation is a question of law subject to unlimited appellate review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

7

Before the statute was amended in 2024, K.S.A. 21-6615(a) stated in part:

"(a) In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 21-6615(a).

In *Ervin*, our Supreme Court held that K.S.A. 21-6615(a) requires a district court to award a defendant an allowance for all time spent incarcerated pending the disposition of the defendant's case "regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. But even before *Ervin* was decided, the Kansas Legislature had amended the statute to provide that when computing the defendant's sentence, the district court shall not award jail credit for "[a]ny time awarded as credit in another case when consecutive sentences are imposed on a defendant." L. 2024, ch. 96, § 7, codified at K.S.A. 2024 Supp. 21-6615(a)(2)(A). The effective date of the amendment was May 23, 2024.

The parties disagree as to which version of the jail credit statute applies. Smith contends he is entitled to the rule in *Ervin* based on the prior version of the statute and the fact that he committed his crimes before the statute was amended. The State contends that Smith is not entitled to relief because his probations were revoked and his jail credit was calculated after the effective date of the statutory amendment.

We find that resolution of this issue is controlled by settled caselaw. "'[T]he fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was

8

committed.'" *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). Based on this general principle of law, our court has explicitly held that the 2024 amendment to K.S.A. 21-6615(a) applies only to sentences for crimes committed on or after May 23, 2024. *State v. Mitchell*, 66 Kan. App. 2d 196, 207, 579 P.3d 970 (2025) (holding defendant's jail credit was governed by the statute in effect when defendant *committed* the crime), *rev. granted* 321 Kan. 793 (2026); see also *State v. Smith*, No. 127,114, 2026 WL 123620, at *2 (Kan. App. 2026) (unpublished opinion) (same); *State v. Elam*, No. 128,025, 2026 WL 787868, at *11 (Kan. App. 2026) (unpublished opinion) (same). The *Mitchell* court determined that a statute operates prospectively unless its language clearly indicates that the Legislature intended it to operate retroactively, and the Kansas Legislature "provided no indication that it intended the amended jail-credit statute to apply retroactively in any respect." 66 Kan. App. 2d at 204.

The State points to language in *Ervin* where the court found, "K.S.A. 21-6615(a), *as worded when Ervin was sentenced*, directed courts to credit a defendant" for time served pending the disposition of a case. (Emphasis added.) *Ervin*, 320 Kan. at 307. The State claims this language keeps open the possibility the Supreme Court will find that the 2024 statutory amendment will apply to any defendant sentenced after the effective date of the amendment. We are not persuaded by this argument because it runs counter to the fundamental rule that a defendant is sentenced under the sentencing provisions in effect when the crime was committed. *McLinn*, 307 Kan. at 337. *Ervin* was not addressing the application or retroactivity of the 2024 amendment to K.S.A. 21-6615(a). The isolated language in *Ervin* the State highlights was mere dicta in that opinion.

Moreover, we observe that although Smith's probations were not revoked until after the jail credit statute was amended, his original sentences were imposed before the amendment. So even if the State is correct about the significance of the one sentence in *Ervin*, it does not follow that Smith's jail credit issue would be controlled by the amended statute. Also on this point, we note that in *State v. Romey*, 321 Kan. 400, 417-18, 580

9

P.3d 1 (2025), a case discussing jail credit and decided after *Ervin*, the court stated: "The Legislature has amended the jail-credit statute, but the version we considered in *Ervin* applies because it was in effect when Romey *committed the murder*." (Emphasis added.) As in *Ervin*, the *Romey* court was not addressing the application or retroactivity of the 2024 amendment to K.S.A. 21-6615(a), so the quoted language is merely dicta. But if we were to consider the isolated language in *Romey*, it would support the conclusion that the 2024 amendment to the jail credit statute applies only to sentences for crimes *committed* on or after May 23, 2024.

The State cites one other case that merits attention because it involves retroactivity of a statute addressing jail credit. First, we provide some background. Before 1988, the Kansas statute on jail credit, K.S.A. 21-4614 (Ensley 1981), was construed by the Kansas Supreme Court as not authorizing or requiring jail time credit to be awarded a defendant for time served in jail as a condition of probation. See, e.g., *State v. Fowler*, 238 Kan. 326, Syl. ¶ 5, 710 P.2d 1268 (1985) (citing K.S.A. 21-4614 [Ensley 1981] and holding there is no statutory requirement that credit be given for jail time served as a condition of probation). All decisions to grant defendants credit for time served in jail as a condition of probation were discretionary. See 238 Kan. at 338-39. In 1988, the Kansas Legislature enacted a new statute, K.S.A. 21-4614a (Ensley 1988), which changed the law to make jail credit mandatory, rather than discretionary, for time a defendant served in jail as a condition of probation. But questions arose as to whether the new statute applied prospectively or retroactively to pending cases.

In *State v. King*, 14 Kan. App. 2d 478, 480, 793 P.2d 1267 (1990), King committed crimes and was sentenced to probation before the effective date of K.S.A. 21-4614a (Ensley 1988), but his probation was revoked and he was ordered to serve his sentence after the effective date of the new statute. The issue in the case was whether the district court was required to award King credit for 127 days he served in the community corrections residential facility as a condition of his probation. The district court denied

the jail credit because King had served the 127 days in the residential facility before the new statute took effect. 14 Kan. App. 2d at 479. On appeal, the State argued the new statute did not apply because King committed his crimes and was originally sentenced before the effective date of the new statute. King argued the new statute applied because his probation was not revoked and he was not ordered to serve his sentence until after the effective date of the new statute. K.S.A. 1989 Supp. 21-4614a provided:

"(a) In any criminal action in which probation, assignment to a conservation camp or assignment to community corrections is revoked and the defendant is sentenced to confinement, for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates, the defendant's sentence is to be computed from a date, hereafter to be specifically designated in the sentencing order of the journal entry of judgment or the judgment form delivered with the defendant to the correctional institution. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent in a residential facility while on probation, assignment to a conservation camp or assignment to community correctional residential services program. The commencing date of such sentence shall be used as the date of sentence and all good time allowances as are authorized by law are to be allowed on such sentence from such date as though the defendant were actually incarcerated in a correctional institution."

In determining the scope of the statute's applicability, this court focused on the language "'[i]n any criminal action in which probation . . . is revoked'" and found that the language expressed a legislative intent for the statute to be applied retroactively to any probation revocation that occurred after the statute was enacted, no matter when the defendant's crime was committed. *King*, 14 Kan. App. 2d at 480-82. This court held:

"The clear language of the statute reflects the legislative intent to apply 21-4614a to all sentences imposed in probation revocation proceedings occurring after the statute's effective date and to allow credit for all time in custody during probationary periods,

11

regardless of whether the crime for which defendant was placed on probation occurred prior to the statute's effective date." 14 Kan. App. 2d at 482.

The State seizes upon the result in *King* and argues it supports the result the State wants to see here—that the 2024 amendment to K.S.A. 21-6615(a) applies to all sentences imposed at probation revocations after the effective date of the amendment. But *King* involved an appeal of the denial of jail credit in a different context than we have here. The jail credit statute discussed in *King*, K.S.A. 21-4614a (Ensley 1988), for the first time made jail credit mandatory, rather than discretionary, for time a defendant served in a residential facility as a condition of probation, and it expressly applied "in any criminal action" in which probation is revoked. Our current jail credit statute, K.S.A. 21-6615(a), also begins with the language "[i]n any criminal action," but this same language is not found in the 2024 amendment to the statute as an expression of legislative intent on when the amendment applies. We agree with our court's decision in *Mitchell* that there is no language in the 2024 amendment to K.S.A. 21-6615(a) expressing a legislative intent for the amendment to be applied retroactively to pending cases. See 66 Kan. App. 2d at 204.

Finally, we note the holding in *King* benefitted the defendant by requiring him to receive jail credit he would not have been required to receive before K.S.A. 21-4614a (Ensley 1988) was enacted. The State's desired result here—applying the 2024 amendment to K.S.A. 21-6615(a) retroactively to Smith's pending case—would be detrimental to Smith by reducing the jail credit he will receive, potentially violating the Ex Post Facto Clause of Article 1, Section 10 of the United States Constitution. See *State v. Patton*, 315 Kan. 1, 3, 503 P.3d 1022 (2022) (interpreting amendment to Kansas' driving under the influence statute). The outcome in *King* did not implicate the Ex Post Facto Clause, and the court in that case did not discuss constitutional considerations in its opinion. We find *King* distinguishable from Smith's case and not controlling here.

As for whether retroactive application of the 2024 amendment to K.S.A. 21-6615(a) would violate the Ex Post Facto Clause, neither party has briefed this argument for our consideration in Smith's case, and we decline to address the argument in this opinion. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed are deemed waived or abandoned). Moreover, Smith is receiving the relief he is seeking without our court addressing this issue.

To sum up, Smith's convictions resulted from acts committed before May 23, 2024. Accordingly, we hold the prior version of K.S.A. 21-6615(a) controls the jail credit Smith is entitled to receive because it was the law in effect when Smith committed his crimes. As in *Ervin*, the district court here was required to "award one day of credit for each day that [Smith] was incarcerated pending disposition of this case regardless of whether he received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. The State acknowledges that this court is bound by *Ervin* but nonetheless argues *Ervin* was wrongly decided. This court is duty-bound to follow Kansas Supreme Court precedent absent some indication the court intends to depart from its prior position. See *Patton*, 315 Kan. at 16. We have no such indication here. See *State v. Zongker*, 322 Kan. 137, 139, 586 P.3d 769 (2026). Thus, we vacate the district court's jail credit awarded in each of Smith's three cases and remand with directions for the district court to recalculate the jail credit consistent with *Ervin*.

Affirmed in part, vacated in part, and remanded with directions.