No. 47,769

STATE OF KANSAS, *Appellee,* v. ROBERT S. CURTIS, *Appellant.*

(538 P. 2d 1383)

Opinion filed July 17, 1975.

*Christopher A. Rogers,* of Winfield, argued the cause and was on the brief for the appellant.

*Otis W. Morrow,* Deputy County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, and *William C. Ellis,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant-appellant (Robert S. Curtis) appeals from jury convictions of attempted burglary (K. S. A. 21-3715), possession of burglary tools (K. S. A. 21-3717), speeding (K. S. A. 1973 Supp. 8-532, Repealed, Laws of 1974, Ch. 33, Sec. 8-2205),

eluding an officer (K. S. A. 8-504, Repealed, Laws of 1974 Ch. 33, Sec. 8-2205), and felony theft (K. S. A. 21-3701).

The arrest of defendant resulted from a series of events occurring during the night of April 10-11, 1973. At 11:30 the night of April 10, a light blue 1967 Ford automobile was reported stolen by the owner—George H. Gower of Wichita. The automobile had been taken from the parking lot of the Seneca Bowl in Wichita. In the early morning hours of April 11, Officer Bob Odell of the Cowley County Sheriff's Department was patrolling in the City of Burden, about thirty-five miles southeast of Wichita. While on patrol, Officer Odell discovered that the hinge pins had been removed from the rear door of Henderson's Drug Store in Burden. Odell also found pry marks on the door, some debris and an army duffel bag. Odell picked up the items and as he continued his patrol he observed a 1967 blue Ford automobile turning east on Highway 160. Odell pursued the automobile turning on his red light and siren. Odell got close enough to the blue Ford to observe the license tag number and what appeared to be three silhouettes in the automobile. Odell pursued the blue Ford at a high speed east on Highway 160 about six miles to Cambridge where it turned north on a county road headed toward Latham. Odell testified that approximately five miles north of Highway 160 the blue Ford left the road, went through a barbed wire fence, and came to a stop on the Ferguson ranch. Odell stopped his automobile about one hundred feet behind the Ford. Odell could not identify the occupants as they left the automobile, because of the dirt and debris thrown into the air by the speeding automobile. Odell then radioed for assistance from other officers. Officer James Lazelle soon arrived and he and Odell searched the area and took photographs of the abandoned Ford automobile. Odell and Lazelle proceeded back toward Burden and on the way, at a point about three miles east of Burden, they found a black attache case which contained various burglary tools. Odell testified that, while he was in pursuit of the blue Ford, he had seen what appeared to be a case thrown from a window of the Ford at a point about three miles east of Burden.

In the meantime, Officer Wallace Parks of the Butler County Sheriff's Department was on patrol in the vicinity of Douglass, about twenty miles west of Latham. Parks received a radio transmission concerning the blue Ford fleeing east from Burden. Parks was directed to patrol an area south of Latham. Parks continued to patrol until about 7 a. m., when he was informed, by another

officer by radio, that a single unknown individual had stopped at the Calvin residence and asked for gasoline. Parks was informed by the other officers, who had talked to Mrs. Calvin, that the unknown individual had left the Calvin residence with Mr. Calvin and his son in the Calvin pickup and that they were proceeding north toward Latham.

Parks testified that he was well-acquainted with the Calvins, knew the location of their residence, and knew the route which would probably be taken by the Calvins if they proceeded north from their place—Parks stationed himself accordingly. He recognized the Calvin pickup as it approached and turned on the red light on his patrol car. As the Calvin pickup came to a halt, Officer Parks approached with his drawn pistol and ordered the unknown suspect, who was seated between the Calvins, to step out of the vehicle. After a pat down search, in which Parks removed several items including a pair of gloves from the subject's person, the subject was arrested and was later identified as defendant Curtis. While Parks was engaged in the "frisk" or "pat down search" of defendant, Verdie Cox, of the Cowley County Sheriff's Department, arrived at the scene.

Officer Bill Brooks, who participated in the search of the Latham area, was called as a witness for defendant. Brooks testified that he participated in the arrest of two other individuals in the Latham area around 10:30 or 11:00 a. m., the morning of April 11, 1973. The two individuals were arrested in connection with the Henderson Drug Store incident.

Defendant specifies three points of error on appeal: (1) Erroneous admission of certain physical evidence taken from defendant as a result of a search and seizure made in violation of defendant's constitutional rights; (2) submission of an erroneous instruction pertaining to defendant's liability for crimes committed by another; and (3) the trial court erroneously instructed the jury and restricted defense counsel concerning the prosecution's burden of proof.

In their briefs both parties made numerous references to the trial transcript which necessitated our calling for the transcript which we have at hand.

Defendant's first point centers on the admission into evidence of the gloves taken from him at the time of his arrest. Flecks of paint were found on the gloves which, according to Officer George Love, of the Wichita Police Department, matched the color paint samples

removed from the door of the Henderson Drug Store. Officer Love had been employed in the Wichita Police Forensics Laboratory for thirteen years. He had previously made microscopic paint examinations and color comparisons. He did not make a chemical analysis of the paint samples in question, but only a microscopic examination to ascertain if the samples matched in color. Officer Love's failure to make a chemical analysis goes to the weight and credibility of his testimony, rather than to the question of its admissibility.

Defendant's basic contention concerning the admission of the gloves is that they were the fruit of an unlawful search and seizure. Defendant argues that the evidence failed to establish probable cause to justify the arrest of defendant and that the use of the gloves taken from defendant's person as a product of a search, following an unlawful arrest, denied defendant the constitutional safeguards of the Fourth and Fourteenth Amendments to the Constitution of the United States and Section 15 of the Bill of Rights to the Kansas Constitution. Defendant raised the issue by a pretrial motion to suppress which was denied by the trial court. Defendant again objected to the admission of the gloves at trial.

Officer Parks was the only witness at the hearing on the motion to suppress. His testimony at trial was essentially the same as that given on the motion to suppress. At trial, testimony of other officers tended to corroborate the testimony of Parks concerning the knowledge possessed by him at the time of the arrest. In overruling defendant's motion to suppress the trial court found:

"2. That Officer Parks had probable cause to make an arrest and further at the time he transferred the custody of the Defendant to the Officer from Cowley County, that they had the right to inventory his personal effects and take into custody the personal effects that they found on him since it was a lawful arrest.

"3. That the Court further finds that under all the circumstances as testified to by Officer Parks, the radio, stranger in the vicinity, and the fact that he had known the Calvins for quite some time, gave further impetus to the probable cause factor involved and further the testimony of Officer Parks as to the condition of the clothing of the Defendant and his knowledge of the terrain of the area further added impetus to his knowledge of probable cause."

At the outset, it should be noted that in the instant case we are concerned with probable cause for a warrantless arrest under K. S. A. 22-2401, as distinguished from the lesser requirements of a stop and frisk authorized by K. S. A. 22-2402. Obviously, Officer Parks had sufficient knowledge to meet the requirements of 22-2402 in stopping the Calvin pickup, but as we pointed out in *State v. Jackson*, 213 Kan. 219, 515 P. 2d 1108, the reasonable suspicion required under

22-2402 does not rise to the level of probable cause required by 22-2401. In *Jackson,* wherein we were dealing with stop and frisk, the officer had no prior knowledge concerning the commission of any crime, nor had he observed any conduct on the part of the subject which would reasonably arouse suspicion. Our decision in *Jackson* is of no aid in resolving the issue presented by the facts herein.

The basic question presented is whether Officer Parks had probable cause to arrest defendant. K. S. A. 22-2401 (*c*) (1) provides, *inter alia,* that a law enforcement officer may arrest a person when he has probable cause to believe that the person has committed a felony. The provisions of the statute referred to simply codify the existing case law of this jurisdiction authorizing the warrantless arrest for a felony if the officer has probable cause. (See discussion in Vol. 20 Kansas Law Review "Arrest Under The New Kansas Criminal Code," by Keith G. Meyer, pp. 685, 707.)

In *State v. Lamb,* 209 Kan. 453, 497 P. 2d 275, we noted the similarity in evidentiary requirements with respect to probable cause to support a warrantless arrest and that required for the issuance of a search warrant by a magistrate, we said:

"Evidence sufficient to support probable cause for an arrest on the part of an arresting officer is also sufficient to support a finding of probable cause by a magistrate in the issuance of a search warrant." (p. 467.)

In resolving questions of probable cause, the so-called "prudent man" test is well-established in this jurisdiction as the proper standard. (*State v. Wood,* 190 Kan. 778, 378 P. 2d 536; *State v. Blood,* 190 Kan. 812, 378 P. 2d 548; *State v. Brown,* 198 Kan. 473, 426 P. 2d 129; *State v. Kelly,* 203 Kan. 360, 454 P. 2d 501; and *State v. Lamb,* supra.) In *Brown* we stated the basic rule in these words:

". . . An arrest without a warrant, to support an incidental search, must be made with probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man's believing that a crime has been committed at or before the time of arrest. . . ." (p. 477.)

In *Lamb* the subject of probable cause was discussed in depth in the light of our own decisions and those of the United States Supreme Court, particularly *Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Henry v. United States,* 361 U. S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168; and *Carroll v. United States,* 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A. L. R. 790. The scope and thrust of the prudent man rule are delineated in *Lamb* wherein we held:

"Probable cause, which a magistrate must find to warrant the issuance of a search warrant, refers to that quantum of evidence which would lead a prudent man to believe that an offense has been committed. It is not necessary that the evidence giving rise to .such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the evidence lead the magistrate to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information." (Syl. ¶ 3.)

In the more recent case of *Adams v. Williams,* 407 U. S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, the court noted that probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Further in the opinion the court quoted with approval a previous statement appearing in *Brinegar v. United States,* 338 U. S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302, reh. den. 338 U. S. 839, 94 L. Ed. 513, 70 S. Ct. 31:

" 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . .' " (p. 149.)

In the instant case the evidence discloses that Officer Parks, at the time defendant was ordered out of the Calvin pickup, possessed reliable information (1) ·that an attempted burglary had been committed; (2) that three suspects were pursued from the scene; (3) that the suspects abandoned their automobile on the Ferguson ranch; (4) that an unidentified individual had stopped at the Calvin residence, asked for gasoline for his automobile and left in company with Mr. Calvin and his son in the Calvin pickup; (5) that defendant's pants were wet and muddy; and (6) that the terrain between the Ferguson ranch and the Calvin residence was such that a person must wade a creek and walk through mud.

Singly, none of these circumstances are of great significance, but considered together, we believe they are sufficient to justify Officer Parks, at the time he stopped the Calvin pickup, in believing that defendant had participated in the attempted burglary at Burden. The facts recited were known to Officer Parks when defendant exited the Calvin pickup. We are aware of the rule that facts, which may have appeared to an officer after an arrest, do not make lawful that which was unlawful prior thereto. Neither party pinpoints the exact time of the arrest. Parks testified that after he had completed the search of defendant's person, defendant inquired what was going on and at that point Parks informed defendant he was under

arrest for attempted burglary. Officer Parks testified that as he was frisking defendant Mr. Calvin volunteered information concerning defendant's conduct which would have added to probable cause and may have been considered as contemporaneous with the normal processes incident to arrest and custody. (*United States v. Edwards*, 415 U. S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234.) However, the record does not indicate that the trial court considered the information volunteered by Mr. Calvin in finding probable cause, and neither do we.

The mere presence of a stranger in the vicinity, of course, is insufficient, as defendant argues, to supply probable cause, but the chain of circumstances shown by the evidence herein, all of which Officer Parks had knowledge, was sufficient information to lead a reasonable officer to believe that guilt was more than a possibility. (*State v. Lamb*, supra; *Draper v. United States*, 358 U. S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) The total information possessed by Officer Parks constituted a basis for much more than mere suspicion on his part.

The existence of probable cause for an arrest is, in the first instance, a substantial determination to be made by the trial court from the facts and circumstances of the case. The quantum of information which constitutes probable cause for an officer to make an arrest must be measured by the facts of each particular case. (*Wong Sun v. United States*, supra.) In determining whether probable cause for an arrest exists, all the information in the officer's possession, fair inferences therefrom, and observations made by him, are pertinent; and facts may be taken into consideration that would not be admissible on the issue of guilt. (5 Am. Jur. 2d, Arrest, § 48, pp. 740-741.) In the instant case the trial court heard the testimony and considered the evidence on the motion to suppress and again at trial. We believe the record supports the trial court's rulings in both instances.

Defendant's second point is predicated upon the giving of an aiding and abetting instruction (PIK [Criminal] 54.05) in response to a question submitted by the jury after it had retired for deliberation. The jury's question was "does any degree of participation involve guilty in the crime as charged." Defendant concedes that the mere fact the information failed to allege that defendant was being charged with aiding and abetting does not preclude a jury verdict finding him guilty as a principal even though the evidence may disclose only accessorial conduct. Defendant's position in

this regard is not clearly defined—it appears that he is actually arguing that because of insufficient evidence the instruction should not have been given.

Defendant relies upon *State v. White*, 211 Kan. 862, 508 P. 2d 842, wherein the aiding and abetting instruction given was one of the grounds for reversal. An examination of the *White* opinion reveals that the error was not in the giving of the instruction, but the omission of the key word "intentionally." No such omission occurred in the case at hand. Defendant's argument that the evidence was insufficient to justify an aiding and abetting instruction is answered by our decision in *State v. Sharp*, 202 Kan. 644, 451 P. 2d 137, cert. den. 393 U. S. 1100, 21 L. Ed. 2d 791, 89 S. Ct. 896. Sharp acted in concert with several other persons in perpetrating a robbery and burglary. The exact extent of Sharp's participation was not shown, but there was evidence from which an inference of his participation could be drawn. We upheld Sharp's conviction, noting that it has long been the law that one who aids and abets in the commission of an offense may be charged, tried and convicted as a principal. In the instant case there is evidence that defendant acted in concert with two other persons in the attempted burglary and the events which followed. Under familiar rules governing appellate review we find no error in the giving of the instruction in question.

In his third and final point, defendant contends the trial court erroneously instructed on the prosecution's burden of proof. The instruction was PIK [Criminal] 52.02 which we have approved on numerous occasions. (See *State v. Wilkins*, 215 Kan. 145, 523 P. 2d 728; *State v. White*, 213 Kan. 276, 515 P. 2d 1081; *State v. Taylor*, 212 Kan. 780, 512 P. 2d 449; and *State v. Larkin*, 209 Kan. 660, 498 P. 2d 37.)

Defendant makes a further argument on this point that the trial court unduly restricted defense counsel in final summation by not permitting counsel to use the phrase "beyond a reasonable doubt" in his argument concerning the burden of establishing defendant's guilt. The court, however, allowed counsel to tell the jury that the state had the burden of proving to its satisfaction that no reasonable doubt exists and that the jury could not convict if a reasonable doubt did exist in the minds of the jurors. The court's language more nearly corresponds with that used in PIK [Criminal] 52.02, however, the court may have been overly technical in confining counsel's argument so strictly within the words of the instruction.

We discern no practical difference in the effect or meaning of the terminology in question. Telling the jury that it cannot convict if a reasonable doubt remains as to any of the claims made by the state conveys the same meaning as to burden of proof as requiring proof beyond a reasonable doubt.

The judgment of the trial court is affirmed.

FROMME, J., not participating.