No. 125,831

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MALIK D. BEASLEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

In a prosecution for criminal use of weapons in violation of K.S.A. 2019 Supp. 21-6301(a)(18), the State must prove beyond a reasonable doubt not only that the defendant knowingly possessed a firearm, but also that the defendant did so while knowingly convicted of a domestic violence offense within the preceding five years. The "knowingly" culpable mental state applies to each element of the crime.

2.

A district court's jury instruction that states: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty," is legally appropriate. Using the terminology "no reasonable doubt" does not lower the State's burden of proof to a lesser standard than "beyond a reasonable doubt" as there is no meaningful distinction between the terms.

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Submitted without oral argument. Opinion filed May 3, 2024. Affirmed.

1

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.

MALONE, J.:  Malik D. Beasley appeals his convictions of two counts of criminal use of weapons following a jury trial. Beasley claims:  (1) The State presented insufficient evidence to support his convictions; (2) the district court committed clear error in instructing the jury; (3) the reasonable doubt jury instruction lowered the State's burden of proof to a lesser standard than beyond a reasonable doubt, causing structural error; (4) the State committed reversible prosecutorial error during closing argument; and (5) cumulative trial error requires reversal of the convictions. For the reasons explained below, we disagree with Beasley's claims and affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are straightforward and mostly uncontested. In April 2020, Wichita police officer Jared Henry saw photographs of Beasley on social media with what appeared to be firearms during a routine investigation by the violent crimes community response team. A records check revealed that Beasley had been convicted of a domestic violence offense within the previous five years that prohibited him from possessing firearms. Based on this information, law enforcement executed a search warrant on the home where Beasley was staying. Investigators found an AK-style weapon under the mattress in the bedroom occupied by Beasley and his girlfriend. In the same bedroom, investigators found a handgun underneath the bottom drawer in a chest of drawers. Beasley's debit card and his wallet were found in the bedroom with the two guns.

The State charged Beasley with two counts of criminal use of weapons in violation of K.S.A. 2019 Supp. 21-6301(a)(18). The case proceeded to a two-day jury trial beginning on June 27, 2022. At trial, the State admitted into evidence pictures from the internet and videos from a cellphone showing Beasley with apparently the same AK-style weapon found during the search. The State also admitted into evidence a one-page form journal entry from the Wichita Municipal Court. The journal entry showed that on January 17, 2017, Beasley pleaded no contest and was found guilty of one count of "Domestic Battery—Bodily Harm" under W.M.O. § 5.10.025(a)(1). A stamp at the bottom of the journal entry signed and dated by the municipal judge designated that the conviction was an act of domestic violence. Beasley presented no defense at trial.

The jury found Beasley guilty as charged. The district court imposed a controlling sentence of 26 months' imprisonment but granted Beasley probation for 18 months. Beasley timely appealed the district court's judgment.

DID THE STATE PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS?

Beasley first claims the State presented insufficient evidence to support his convictions of criminal use of weapons. Beasley was convicted under K.S.A. 2019 Supp. 21-6301(a)(18), which prohibits:  "[K]nowingly . . . possessing any firearm by a person who, within the preceding five years, has been convicted of a misdemeanor for a domestic violence offense, or a misdemeanor under a law of another jurisdiction which is substantially the same as such misdemeanor offense."

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.' [Citations omitted.]" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

3

Beasley's claim has two parts. First, he argues that K.S.A. 2019 Supp. 21-6301(a)(18) required the State to prove beyond a reasonable doubt not only that he knowingly possessed a firearm, but also that he did so while knowingly convicted of a domestic violence offense within the preceding five years. The State argues that the "knowingly" culpable mental state applies only to the possession of a firearm element of the crime. Second, Beasley argues that the evidence was insufficient to prove beyond a reasonable doubt that he knew he had been convicted of a domestic violence offense within the preceding five years that prohibited him from possessing a weapon. The State argues that the municipal court journal entry showing that Beasley was convicted of "Domestic Battery—Bodily Harm" was sufficient evidence to prove this element of the crime. As explained below, Beasley wins his first argument but loses the second.

*Does the "knowingly" culpable mental state apply to each element of the crime?*

Starting with the first argument, Beasley claims the State needed to prove beyond a reasonable doubt not only that he knowingly possessed a firearm, but that he did so while knowingly convicted of a domestic violence offense within the preceding five years. In other words, he argues that the "knowingly" culpable mental state applies to each element of the crime. K.S.A. 21-5202 addresses the culpable mental state for crimes and defines intentionally, knowingly, and recklessly. The statute states in part:

> "(f) If the definition of a crime prescribes a culpable mental state that is sufficient for the commission of a crime, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the crime, unless a contrary purpose plainly appears.
> "(g) If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided." K.S.A. 21-5202.

4

Beasley argues that K.S.A. 21-5202(f) applies to his conviction under K.S.A. 2019 Supp. 21-6301(a)(18) because the weapons violation for which he was convicted requires a knowing mental state without distinguishing between the material elements of the crime. The State argues that K.S.A. 21-5202(g) applies to Beasley's conviction. Other panels of this court have addressed similar issues with conflicting opinions.

In *State v. Wiley*, No. 123,814, 2022 WL 1436398, at *5 (Kan. App. 2022) (unpublished opinion), *rev. denied* 317 Kan. 850 (2023), this court considered whether K.S.A. 2020 Supp. 21-6301(a)(17) required a finding that Wiley knew he was subject to a court order prohibiting him from possessing a weapon. K.S.A. 2020 Supp. 21-6301(a)(17) prohibits "knowingly . . . possessing any firearm by a person while such person is subject to a court order . . . ." This court found that K.S.A. 2020 Supp. 21-5202(f) applied to K.S.A. 2020 Supp. 21-6301(a)(17) because the latter statute did not distinguish a specific element to which the knowing mental state applied. This court relied in part on *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 2197, 2200, 204 L. Ed. 2d 594 (2019), where a knowing mental state was extended to the status element of a federal statute. Thus, this court held that K.S.A. 2020 Supp. 21-6301(a)(17) required the State to prove that Wiley knowingly possessed a weapon, and that Wiley knew he was subject to a certain type of court order at that time. *Wiley*, 2022 WL 1436398, at *5.

But in *State v. Leija*, No. 123,079, 2022 WL 333606, at *8-9 (Kan. App. 2022) (unpublished opinion), a case decided three months before *Wiley*, a panel of this court analyzed an argument similar to Beasley's and applied to K.S.A. 2018 Supp. 21-6301(a)(18)—an unaltered version of the same subsection under which Beasley was convicted. The *Leija* panel analyzed the statute in accordance with federal cases like *Rehaif* but came to the opposite conclusion as the panel in *Wiley*. The *Leija* panel reasoned that because the term "knowingly" modified the term "possession" in K.S.A. 2018 Supp. 21-6301(a)(18), the knowing mental state applied only to possession of a weapon and not to the status element of having been convicted of a domestic violence

offense. *Leija*, 2022 WL 333606, at *8-9. Significantly, the *Leija* panel did not cite or discuss K.S.A. 21-5202(f) or K.S.A. 21-5202(g) in its analysis.

We conclude the *Wiley* panel reached the correct result on this issue. As stated, the *Leija* panel did not cite or discuss K.S.A. 21-5202(f) which provides that the designated culpable mental state for a crime applies to each element of the crime unless a contrary purpose plainly appears. And as Beasley points out, federal cases like *United States v. Minor*, 63 F.4th 112, 121-22 (1st Cir. 2023), have analyzed federal equivalents to K.S.A. 21-6301(a)(18) and found that the knowing mental state applies to the status element of having been convicted of a domestic violence offense. Other federal courts have interpreted similar statutes similarly. See, e.g., *United States v. Kaspereit*, 994 F.3d 1202, 1208 (10th Cir. 2021); *United States v. Benton*, 988 F.3d 1231, 1236-39 (10th Cir. 2021).

Kansas courts have applied K.S.A. 21-5202(g) to criminal statutes to find that a particular culpable mental state applies to some elements of a crime but not to all the elements. In *State v. Dinkel*, 314 Kan. 146, 156-58, 495 P.3d 402 (2021), the court applied K.S.A. 2020 Supp. 21-5202(g) to the rape statute and found that because the statute included a culpable mental state for some means of committing rape but did not include a culpable mental state for rape of a child, there was no mental culpability requirement for rape of a child under 14 years of age in violation of K.S.A. 2020 Supp. 21-5503(a)(3). And in *State v. Pulliam*, 308 Kan. 1354, 1368, 430 P.3d 39 (2018), the court found that the culpable mental state of "recklessly" applied only to involuntary manslaughter under K.S.A. 2017 Supp. 21-5405(a)(1) but not under 21-5405(a)(4).

Here, the statutory structure supports a finding that the "knowingly" culpable mental state applies to each element of the crime. K.S.A. 2019 Supp. 21-6301(a) states that "[c]riminal use of weapons is knowingly" and then lists 18 subsections prohibited by the statute. Subsection 18 states "possessing any firearm by a person who, within the preceding five years, has been convicted of a misdemeanor for a domestic violence

6

offense." The statute does not indicate that the knowing mental state applies only to the possession of a firearm element of the crime. Instead, the statute designates that the crime must be committed knowingly and does not distinguish between the material elements of the offense. In this situation, K.S.A. 21-5202(f) applies to K.S.A. 2019 Supp. 21-6301(a)(18), and K.S.A. 21-5202(g) does not apply to the statute. The "knowingly" culpable mental state applies to the possession of a firearm element and to the status element of having been convicted of a domestic violence offense. Thus, we hold that the State needed to prove beyond a reasonable doubt not only that Beasley knowingly possessed a firearm, but also that he did so while knowingly convicted of a domestic violence offense within the preceding five years.

*Did the State present sufficient evidence to prove the status element of the crime?*

Beasley next argues that the evidence was insufficient to prove beyond a reasonable doubt that he knew he had been convicted of a domestic violence offense that prohibited him from possessing a weapon. Beasley does not assert that his domestic battery conviction cannot support his criminal use of a weapon convictions. Instead, he argues that the evidence did not show that he knew he had been convicted of a domestic violence offense as defined in K.S.A. 2019 Supp. 21-6301(m)(1). The only evidence the State presented on that element of the crime was a journal entry of sentencing showing that Beasley pleaded no contest to and was convicted of "Domestic Battery—Bodily Harm" in the Wichita Municipal Court.

K.S.A. 2019 Supp. 21-6301(m)(1) has its own definition of domestic violence: "[T]he use or attempted use of physical force, or the threatened use of a deadly weapon, committed against a person with whom the offender is involved or has been involved in a dating relationship or is a family or household member." Beasley concedes that the evidence is enough to prove each element of this definition other than that he used physical force. Beasley argues: (1) that "bodily harm" may be caused by means other

7

than physical force; (2) that the record does not show that he was informed that the legal definition of bodily harm includes physical force; (3) that his conviction was based on a plea of no contest that "does not necessarily reflect a conviction for the actual crime committed because pleas often rely on legal fictions"; and (4) that the State bore the burden to show that he knew of his status beyond a reasonable doubt.

Beasley was convicted of bodily harm domestic battery under W.M.O. § 5.10.025(a)(1). That ordinance defines bodily harm domestic battery as "knowingly or recklessly causing bodily harm by a family or household member to a family or household member or knowingly or recklessly causing bodily harm by an individual in a dating relationship to an individual with whom the offender is involved or has been involved in a dating relationship." W.M.O. § 5.10.025(a)(1). In the context of committing a battery, Kansas courts have long defined bodily harm as "'any touching of the victim against [the victim's] will, *with physical force*, in an intentional hostile and aggravated manner.'" (Emphasis added.) *State v. Phillips*, 312 Kan. 643, 671, 479 P.3d 176 (2021); *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984). So by definition, the conviction for bodily harm domestic battery required a touching with physical force. Thus, the journal entry of Beasley's municipal court conviction is sufficient evidence to prove the physical force element in the definition of domestic violence at K.S.A. 2019 Supp. 21-6301(m)(1).

Beasley is presumed to know the law and the legal effect of his actions. *State v. Cook*, 286 Kan. 766, 775, 187 P.3d 1283 (2008). So his argument that his lack of awareness of legal definitions shields him from culpability is unfounded. See *Wiley*, 2022 WL 1436398, at *6 ("When Wiley became the subject of a [protection from abuse] PFA order, he was presumed to know that he could not own a firearm while that order was in effect, whether or not he knew about the statute prohibiting such conduct."). Beasley's assertion that his no contest plea somehow invalidates or diminishes his domestic battery conviction is also unpersuasive. A conviction based on a plea of no contest is still a

8

conviction. *State v. Fisher*, 233 Kan. 29, 34-35, 661 P.2d 791 (1983) ("While a plea of nolo contendere, unlike a plea of guilty, may not be used as an admission in any other action based on the same act, for all other purposes a conviction based on a plea of nolo contendere is just like any other conviction.").

Looking closer at the journal entry, it shows that Beasley pleaded no contest to bodily harm domestic battery and was convicted and sentenced to probation. It also shows that Beasley was required to sign the journal entry of probation, had fees imposed, and was advised of his right to appeal. All these things are evidence that Beasley was active in his case and therefore aware of his conviction. And because he is presumed to know the law and the legal effect of his actions, the journal entry also evidences that he was aware of his status and its prohibition against possessing firearms. Finally, the journal entry bears a stamp indicating that the conviction was an act of domestic violence, at least as that term is defined in the Wichita Municipal Code.

In sum, the journal entry was sufficient evidence to show that Beasley's conviction was designated as an act of domestic violence involving physical force against a person in the household, a family member, or someone whom he was dating. Beasley offered no evidence to counter the State's proof of this element of the crime. Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to prove to a rational fact-finder beyond a reasonable doubt that Beasley knowingly possessed two weapons and that he did so while knowingly convicted of a domestic violence offense within the preceding five years that prohibited him from possessing a weapon.

DID THE DISTRICT COURT COMMIT CLEAR ERROR IN INSTRUCTING THE JURY?

Beasley claims the district court committed clear error in instructing the jury on two points. First, Beasley argues that the district court failed to instruct the jury on the definition of domestic violence in K.S.A. 2019 Supp. 21-6301(m)(1). Second, Beasley

9

argues that the district court failed to explicitly instruct the jury that the "knowingly" culpable mental state of the crime applied to Beasley's status as a domestic violence offender. Beasley concedes that he did not request these instructions at his trial. The State argues that the district court properly instructed the jury.

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words, whether the error can be considered harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the district court, or fails to request a specific instruction, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). For a jury instruction to be clearly erroneous, the appellate court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

As we stated earlier, K.S.A. 2019 Supp. 21-6301(m)(1) has its own definition of domestic violence. The State concedes that an instruction on the K.S.A. 2019 Supp. 21-

10

6301(m)(1) definition of domestic violence "might have been" legally and factually appropriate. We agree. Providing the jury with the statutory definition of domestic violence would have been legally appropriate in that it would have fairly and accurately stated the law. And the instruction would have been factually appropriate where the State needed to present sufficient evidence that Beasley had been convicted of a domestic violence offense to be guilty of violating K.S.A. 2019 Supp. 21-6301(a)(18).

But even though an instruction on the definition of domestic violence would have been legally and factually appropriate at Beasley's trial, he has not shown that the district court committed clear error by failing to give the instruction. Beasley's sole argument is that jurors may have considered domestic violence to be more than physical force, like mental or emotional abuse. But that argument ignores the journal entry that indicated that Beasley was convicted of "Domestic Battery—Bodily Harm." For the reasons discussed, the journal entry of conviction satisfied the domestic violence status element of the crime. Beasley did not refute this evidence. The only evidence showed that the domestic battery Beasley committed was not a case of mental or emotional abuse. We are not firmly convinced the jury would have reached a different verdict had the district court instructed the jury on the definition of domestic violence at K.S.A. 2019 Supp. 21-6301(m)(1).

Next, Beasley argues that the district court committed clear error by failing to explicitly instruct the jury that the "knowingly" culpable mental state of the crime applied to Beasley's status as a domestic violence offender. We disagree. For Count One, the district court instructed the jury that the State needed to prove that Beasley "knowingly possessed a firearm (rifle) within five years of a misdemeanor conviction for a domestic violence offense." For Count Two, the district court instructed the jury that the State needed to prove that Beasley "knowingly possessed a firearm (handgun) within five years of a misdemeanor conviction for a domestic violence offense." The instructions followed PIK Crim. 4th 63.010 (2022 Supp.) and mirrored the statutory language of K.S.A. 2019 Supp. 21-6301(a)(18). The use of PIK instructions is strongly recommended for district

11

courts. *State v. Bernhardt*, 304 Kan. 460, 470, 372 P.3d 1161 (2016). Although the instructions did not explicitly state that the "knowingly" culpable mental state applied to each element of the crime, the language would lead the jury to reach that conclusion. Even if an instruction could have better clarified the application of the culpable mental state, the instructions given by the district court did not misstate the law. The district court did not err in instructing the jury on the culpable mental state for the crime.

DID THE REASONABLE DOUBT INSTRUCTION LOWER THE BURDEN TO A LESSER STANDARD THAN BEYOND A REASONABLE DOUBT, CAUSING STRUCTURAL ERROR?

Next, Beasley claims that the reasonable doubt jury instruction lowered the State's burden of proof to a lesser standard than beyond a reasonable doubt, causing structural error. Courts have held that an error with a reasonable doubt instruction that results in a burden less than beyond a reasonable doubt is structural error because prejudice is presumed, requiring reversal without any regard to harmlessness. *Sullivan v. Louisiana*, 508 U.S. 275, 278-80, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); *Miller v. State*, 298 Kan. 921, 935-36, 318 P.3d 155 (2014). The State contends that the district court did not err in instructing the jury on the burden of proof.

K.S.A. 21-5108(a) states: "In all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime. This standard requires the prosecution to prove beyond a reasonable doubt each required element of a crime." Jury instruction No. 2 on the State's burden of proof below read in part: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty." Beasley argues for the first time on appeal that "no reasonable doubt" is a lower standard than "beyond a reasonable doubt."

Beasley claims the instruction used by the district court was legally inappropriate. The instruction is found at PIK Crim. 4th 51.010 (2020 Supp.). As we stated, the use of PIK instructions is strongly recommended for district courts. *Bernhardt*, 304 Kan. at 470.

The State points to *State v. Kornelson*, 311 Kan. 711, 721-22, 466 P.3d 892 (2020), where our Supreme Court held that a district court's jury instruction that states: "'If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find [the defendant] guilty,'" is legally appropriate and does not prevent the jury from exercising its nullification power. The State reminds us that the Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). But the issue in *Kornelson* was whether the district court's jury instruction undermined the jury's nullification power, not whether the instruction lowered the State's burden of proof to a lesser standard than beyond a reasonable doubt. So *Kornelson* is not on point.

Although not cited by either party, a case that is more on point is *State v. Curtis*, 217 Kan. 717, 724-25, 538 P.2d 1383 (1975). In that case, the defendant argued that the district court unduly restricted defense counsel in closing argument by not permitting counsel to use the phrase "beyond a reasonable doubt" concerning the State's burden of establishing the defendant's guilt. Instead, the district court allowed counsel to tell the jury that the State had the burden of proving that no reasonable doubt existed in the minds of the jurors. Our Supreme Court rejected the defendant's claim of error, and held:

> "We discern no practical difference in the effect or meaning of the terminology in question. Telling the jury that it cannot convict if a reasonable doubt remains as to any of the claims made by the state conveys the same meaning as to burden of proof as requiring proof beyond a reasonable doubt." 217 Kan. at 725.

13

Based on *Curtis*, we hold the jury instruction used by the district court was legally appropriate. Beasley makes a distinction without a meaningful difference when he claims that "no reasonable doubt" is a lower standard than "beyond a reasonable doubt." Thus, the district court did not err in instructing the jury on reasonable doubt.

### DID THE STATE COMMIT PROSECUTORIAL ERROR DURING CLOSING ARGUMENT?

Next, Beasley claims the State reversibly erred during closing argument by misstating the law. The State contends that the prosecutor's remarks in question did not misstate the law, and alternatively, any error was harmless beyond a reasonable doubt.

"To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

During closing arguments, the State's counsel said the following:

"Next, within five years of a misdemeanor conviction for domestic violence offense, this is going to go back to you, it's just a piece of paper, State's Exhibit 51, it shows that on January 17, 2017, the defendant was found guilty of domestic battery in the City of Wichita Municipal Court, and if you look at the very bottom of this form, this piece of paper, there's a little—it's a stamp, I believe, that the judge put on there finding that it was a domestic violence offense."

14

Beasley claims that the prosecutor's remarks were a misstatement of the law because the stamp on the journal entry, by itself, was not sufficient to show that the definition of domestic violence in K.S.A. 2019 Supp. 21-6301(a)(18) was met. But Beasley's argument ignores that the prosecutor did not reference the domestic violence stamp in isolation. Instead, the prosecutor described both the journal entry and the stamp. As explained above, the journal entry showed that the conviction was for bodily harm, which includes physical force, and that a domestic violence offense designation was made. So taken together, the evidence supports the domestic violence offense element even if the State had to prove that Beasley knew that the domestic battery was a domestic violence offense under the K.S.A. 2019 Supp. 21-6301(m)(1) definition. Thus, the State did not misstate either the law or the evidence. Because the prosecutor did not commit error, we need not address whether Beasley was prejudiced by the remarks.

DOES CUMULATIVE TRIAL ERROR REQUIRE REVERSAL?

Finally, Beasley claims that the cumulative effect of the errors alleged above deprived him of a fair trial. The State argues there were no trial errors, so Beasley is entitled to no relief based on cumulative error.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Alfaro-Valleda*, 314 Kan. 526, 551, 502 P.3d 66 (2022). The cumulative error rule does not apply when there are no trial errors or only a single error. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

The only potential error we have identified was the district court's failure to sua sponte instruct the jury on the definition of domestic violence in K.S.A. 2019 Supp. 21-6301(m)(1), but we found the claim was unpreserved and there was no clear error. Our

15

Supreme Court has held that "[u]npreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis because K.S.A. 2022 Supp. 22-3414(3) limits a party's ability to claim them as error." *State v. Waldschmidt*, 318 Kan. ___, Syl. ¶ 9, 2024 WL 1590398, at *1 (2024). Thus, Beasley has established no trial errors that may be aggregated in a cumulative error analysis. The cumulative error rule does not apply when there are no trial errors. *Gallegos*, 313 Kan. at 277.

Affirmed.