NOT DESIGNATED FOR PUBLICATION

No. 127,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY R. HEIDER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed March 6, 2026. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Jeffrey R. Heider appeals his convictions of criminal possession of a firearm by a convicted felon and aggravated battery with a deadly weapon. On appeal, Heider contends: (1) The district court erred by failing to instruct the jury regarding the right to bear arms under the Kansas Constitution; (2) the district court erred in instructing the jury on the elements of criminal possession of a firearm by a convicted felon; (3) the district court committed clear error by failing to instruct on the lesser included offense of reckless aggravated battery; (4) the State committed prosecutorial error; (5) the jury instruction on reasonable doubt diminished the State's burden of proof; and (6)

1

cumulative error deprived him of a fair trial. Based on our review of the record on appeal, we find no reversible error. Thus, we affirm his convictions.

FACTS

In the spring of 2022, Jeremy Davis and Kierra Herl broke up after a tumultuous two-year relationship marked by violence. Shortly after the breakup—and about a week before the incident leading to charges in this case—the couple was involved in a serious altercation which left Davis with stab wounds. On the night of May 8, 2022, Davis and his 15-year-old daughter were watching Herl's young son at Davis' residence. Throughout the evening, Herl had been sending angry texts to Davis' daughter because she was upset that Davis was seeing someone else and threatening to kill Davis.

Around 3:30 a.m. on May 9, 2022, Davis left his daughter in charge of Herl's son so that he could go visit his new girlfriend. When Herl found out, she drove over to Davis' house to pick up her son. In addition to taking her son, Herl also took Davis' cell phone and headed to the house where her mother—Beth Navarro—resided.

When Davis returned home, he called 911 to report that his cell phone had been stolen. He then drove to Navarro's house with his daughter to retrieve the phone. Once he arrived at Navarro's house, Herl rushed to Davis' truck and began cussing at him. In addition, she punched and poked him in the face. Davis' daughter got out of the truck and walked towards the front porch—where Navarro and Heider were standing—to get away from the situation.

At some point, Herl and Davis worked their way toward the porch. Evidently, Navarro told Davis' daughter that they needed to go inside the house. According to Davis, he noticed Navarro trying to pull his daughter into the house and became worried about what was happening. As he continued toward the porch, Davis saw Heider—who he did

2

not know at the time—pulling a gun. Davis then turned around and ran back towards his truck. As he was running away, Davis was shot in his left buttock, shattering part of his pelvis and causing other injuries. As a result, Davis underwent surgery and had a colostomy bag for several months.

After being shot, Davis fled the scene in his truck, leaving his daughter behind. Meanwhile, Herl took Davis' daughter to her grandmother's house. On the way, Butler County Police Officer Annette Trieb called Davis' daughter on Herl's cell phone. Officer Trieb heard someone asking if the police were on the phone. After getting out of Herl's car, Davis' daughter told the officer that her dad had been shot, and she did not know where he was.

Davis' daughter told the officer that she saw a man pull out a gun and fire it at her father. She described him as being a "50-year-old white male with a bald head—shaved head and a lot of tattoos and a black widow spider on the top of [his] head." About three hours later, Davis' daughter was interviewed by Derby Police Detective Keith Lunkenheimer, and she provided a consistent version of events.

Officers went to Navarro's home where they found a blood trail from the driveway to the street and other evidence. Lieutenant Chris Poirier of the Derby Police Department also located a spent bullet on Navarro's driveway and found a bullet impact near the rear passenger door of a vehicle sitting on the driveway. That afternoon, Detective Lunkenheimer went to speak with Davis at the hospital.

At the hospital, Davis described the shooter as a heavy-set white male, but he could not identify Heider with certainty when shown a photo. Davis explained that his focus had been on the gun rather than the person holding the gun. However, when shown a photo of Heider, Davis' daughter—who had been just a few feet away from the shooter—told police that she was one hundred percent sure that Heider was the man who

3

had shot her father. Later, Davis' daughter would testify at trial regarding the shooting and identified Heider as the shooter.

Navarro initially denied being at the scene when the shooting occurred. She also denied knowing someone who was bald with tattoos. Subsequently, Navarro changed her story and told law enforcement that she was the person that shot Davis. At trial, Detective Lunkenheimer testified that although Navarro claimed to have shot Davis, her version of events "didn't match the evidence on the scene."

On May 12, 2022, the State charged Heider with one count of aggravated battery in violation of K.S.A. 2021 Supp. 21-5413(b)(1)(A). On July 22, 2022, the complaint was amended to include a second count of criminal possession of a firearm by a convicted felon in violation of K.S.A. 2021 Supp. 21-6304(a)(4)(A). Herl and Navarro were also charged with crimes because of their involvement in the incident. Herl ultimately pled to three counts of child endangerment. Navarro—who is not a party to this appeal—was charged with interference with law enforcement. Both Heider and Navarro were tried together.

The district court commenced a four-day jury trial on December 11, 2023. At trial, Heider stipulated that he was a convicted felon and was prohibited from possessing a firearm on the date of the shooting. After weighing the evidence, the jury convicted Heider of the lesser included offense of aggravated battery in violation of K.S.A. 2021 Supp. 21-5413(b)(1)(B) and of criminal possession of a firearm by a convicted felon in violation of K.S.A. 2021 Supp. 21-6304(a)(4)(A)(i). The jury also convicted Navarro as charged. Subsequently, the district court sentenced Heider to 32 months in prison on the aggravated battery charge and to a consecutive 8 month sentence on the criminal possession of a firearm charge.

Thereafter, Heider filed a timely notice of appeal.

4

*Instruction on Kansas Constitutional Right to Bear Arms*

On appeal, Heider first contends that the district court erred when it refused to give his requested jury instruction regarding the right to bear arms for any lawful purpose under section 4 of the Kansas Constitution Bill of Rights. Prior to trial, Heider requested a jury instruction based on section 4 of the Kansas Constitution Bill of Rights. However, the district court found that such an instruction was not appropriate.

First, we consider de novo whether the court can or should review the issue from both jurisdiction and preservation viewpoints. Next, we consider the merits of the claim to determine whether error occurred. If so, we then move to the final step, which is whether the error requires reversal. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025). Here, it is undisputed that Heider preserved the issue for appeal by requesting the instruction. As such, we turn to the question of whether the instruction was legally and factually appropriate. *Hollins*, 320 Kan. at 242; *State v. Holley*, 313 Kan. 249, 254, 485 P.3d 614 (2021).

The State charged Heider with criminal possession of a firearm by a convicted felon under K.S.A. 2021 Supp. 21-6304(a)(4)(A)(i). A review of the record reveals that the district court properly instructed the jury regarding the elements of the charge. Nevertheless, Heider also wanted the district court to instruct the jury as follows:

> "Section 4 of the Kansas Bill of Rights guarantees a person the right to keep and bear arms for the defense of self, family, home and state, for lawful hunting and recreational use, and [f]or any other lawful purpose.
> "If you find that the Defendant possessed a weapon for any law[ful] purpose, including, but not limited to, those specified in Section 4 of the Kansas Bill of Rights, then you must find him Not Guilty."

We note that several panels of our court have found laws restricting the right to keep and bear arms in Kansas to be constitutional. See *State v. Hall*, 65 Kan. App. 2d 369, 389, 564 P.3d 786 (2025) (finding fundamental rights, including section 4 of the Kansas Constitution Bill of Rights, are not absolute and are subject to narrowly tailored limitations advancing compelling state interests); *State v. Foster*, 60 Kan. App. 2d 243, 261-62, 493 P.3d 283 (2021) (Arnold-Burger, C.J., concurring) (concluding that K.S.A. 21-6304[a][2], which prohibits those "convicted of a felony, other than those specified in subsection [a][3][A], under the laws of Kansas or a crime under the law of another jurisdiction which is substantially the same as such felony" would be facially constitutional under section 4); *State v. McKinney*, 59 Kan. App. 2d 345, 354-57, 481 P.3d 806 (2021) (rejecting facial challenge to K.S.A. 2020 Supp. 21-6301[a][13], which prohibits the possession of a firearm by a person who is or has been mentally ill and subject to involuntary commitment for care and treatment, and finding that it did not violate section 4 of the Kansas Constitution Bill of Rights or the Second Amendment to the United States Constitution).

In *Hall*, a panel of this court rejected the defendant's attack on K.S.A. 2020 Supp. 21-6304(a)(3)(A) as a facially unconstitutional restriction of the right to keep and bear arms under section 4, finding a restriction on a felon possessing firearms as "narrowly tailored to promote a compelling governmental interest." 65 Kan. App. 2d at 382. The panel found that "the prohibition in K.S.A. 2020 Supp. 21-6304(a)(3)(A) advanced the basic and essential role of government in securing the public's safety and welfare by temporarily restricting access to an especially dangerous instrumentality for a select group of convicted felons." 65 Kan. App. 2d at 384.

Although Heider does not challenge K.S.A. 21-6304(a)(4)(A)(i) as unconstitutional on appeal, we find *Hall* to be instructive on the issue before us. Our Legislature has set forth a reasonable and temporary restriction on the right to bear arms on a limited group of convicted felons. K.S.A. 21-6304(a)(3)(A)(i). The purpose of the

6

restriction is to secure public safety and welfare. See 65 Kan. App. 2d at 384. Moreover, it is undisputed that Heider falls within the limited group upon which this restriction has been placed. In fact, he stipulated that he had been "convicted in another jurisdiction of a felony which is substantially the same as a felony described in K.S.A. 21-6304(a)(4)(A)(i), and that as a result of that conviction he was prohibited from possessing a firearm on May 9, 2022." See K.S.A. 21-6304(a)(4)(A)(i).

Consistent with the holding in *Hall*, we find that K.S.A. 21-6304(a)(4)(A)(i) provides a narrowly tailored restriction to the right to keep and bear arms to promote a compelling state interest. In other words, Heider did not have the right to keep and bear arms under section 4 of the Kansas Constitution as a matter of law. Accordingly, we conclude that the jury instruction proposed by Heider was not legally appropriate and, as a result, his argument fails.

*Presentation of Heider's Stipulation to the Jury*

Next, Heider contends that the district court erred in providing the jury with his stipulation of being a convicted felon within the jury instruction on the elements of criminal possession of a firearm by a convicted felon. According to Heider, the district court erred by including the "actual stipulation" to the jury. As discussed above, our review to determine whether a jury instruction was legally and factually appropriate is unlimited. *Hollins*, 320 Kan. at 242. We disagree.

A review of the record reveals that Heider requested that the first element of the jury instruction on this charge state that he possessed a weapon and the second element merely state that he was a convicted felon. He objected to including the part of his stipulation stating that "less than three months had elapsed" since he was discharged from probation. However, the district court did not change the jury instruction based on Heider's objection.

7

It is undisputed that the State charged Heider with criminal possession of a firearm by a convicted felon in violation of K.S.A. 2021 Supp. 21-6304(a)(4)(A)(i) and that Heider stipulated that he was a convicted felon who was prohibited from possessing a firearm. We note that such stipulations are common in charges for the crime of criminal possession of a firearm by a convicted felon. This is because a stipulation not only removes the burden of the State to prove this element at trial but also protects the defendant from having his court records—which may contain details of his past crimes and unfairly prejudice the jury—admitted into evidence to prove the elements of the crime. *State v. Guebara*, 318 Kan. 458, 465, 544 P.3d 794 (2024).

Here, the district court instructed the jury that "[t]he parties stipulate that on September 2, 2008, Jeffrey Heider was convicted in another jurisdiction of a felony which is substantially the same as a felony described in K.S.A. 21-6304(a)(4)(A)(i), and that as a result of that conviction he was prohibited from possessing a firearm on May 9, 2022." The instruction also informed that jury that the second element of the crime charged was proven by the agreement of the parties. It also made it clear that the stipulation could not be considered for any other purpose.

Heider claims that the jury instruction gave the jury more information than necessary because it disclosed the section of the Kansas statute under which the prior felony fell and that Heider had been discharged from probation less than 3 months before the date of the charged crime. But in *Guebara*, the Kansas Supreme Court recognized that the stipulation must meet the statutory requirements of the elements of the crime. 318 Kan. at 464-69. Specifically, our Supreme Court found that "only certain felonies trigger the Kansas statute," so the stipulation must establish that the defendant committed a felony that prohibits them from possessing a weapon on the date in question. 318 Kan. at 466-67.

8

To convict Heider of criminal possession of a firearm, the State was required to prove that Heider committed the type of felony which prohibited his possession of a firearm. In addition, the State was required to prove that the possession occurred less than three months from being discharged from probation. See K.S.A. 2021 Supp. 21-6304(a)(4)(A)-(B). Viewing the jury instruction given by the district court with these elements in mind, we do not find it to be erroneous. Rather, we find that the instruction was vague enough to prevent the jury from learning about the details of Heider's prior felony while containing sufficient information to advise the jury that he was legally prohibited from possessing a firearm on May 9, 2022. Consequently, we find that only the pertinent part of the stipulation was provided to the jury and that the instruction was both legally and factually appropriate.

*Reckless Aggravated Battery Instruction*

Heider also contends that the district court clearly erred in failing to sua sponte instruct the jury on the lesser included offense of reckless aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(2)(B). He argues that the jury may have convicted him of the lesser offense if given the opportunity to consider it. The State agrees with Heider that the lesser included offense of reckless aggravated battery was legally and factually appropriate, but it claims that Heider fails to show clear error. Heider has the burden to show clear error. In other words, Heider must firmly convince us that the jury would have reached a different verdict if the error had not occurred. *State v. Turner*, 318 Kan. 162, 166-67, 542 P.3d 304 (2024).

In this case, Heider was charged with aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(1)(A). But he was convicted of a lesser included offense of aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(1)(B). Now, for the first time, Heider argues that the district court erred in failing to instruct the jury on another lesser included offense. In particular, he argues the district court should have also instructed the jury on

9

the version of reckless aggravated battery as defined in K.S.A. 2021 Supp. 21-5413(b)(2)(B).

Because the parties agree that the evidence was sufficient to support a conviction for this lesser included offense of reckless aggravated battery, we focus our attention on whether it was clearly erroneous for the district court to not give this instruction. Aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(2)(B) requires that the defendant "recklessly" committed aggravated battery. Reckless conduct is "when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j).

Although Heider suggests that it is possible a jury would have found that he acted recklessly rather than knowingly, our review of the record reveals that the State presented eyewitness testimony that Heider acted knowingly when he shot Davis in the buttock as he was running back to his truck. We find no evidence in the record to suggest that Heider was not aiming for Davis or that he did not realize Davis was there when he fired the shot. Rather, we find the evidence in the record supports the State's theory that Heider acted knowingly when he pointed the gun at Davis and shot him in the buttock. We also note that Heider's defense at trial was not that he acted recklessly but that he never possessed or fired a gun. Accordingly, we are not convinced that the jury would have reached a different verdict if it had been instructed on the lesser offense of reckless aggravated battery under K.S.A. 2021 Supp. 21-5413(b)(2)(B).

*Prosecutorial Error*

Heider also contends that he was deprived of a fair trial when, during closing argument, the prosecutor stated facts not in evidence in an effort to appeal to the passions

10

of the jury. Heider claims that because the State chose to try codefendants together in a single trial—as it did here with Heider and Navarro—it was error for the State to suggest in closing argument that the defendants in this case were conspiring during trial to align their testimony. The prosecutor stated: "You've seen them in the courtroom this week sitting next to each other. Still getting their story straight?" When the State made this argument, Heider objected.

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. Claims of prosecutorial error are reviewed to determine: (1) whether prosecutorial error has occurred utilizing a case-specific inquiry which includes considering the context of an argument; and (2) if error is found, whether the error was harmless, *i.e.* whether the State can show that there is no reasonable possibility that the error contributed to the verdict. *State v. Dotson*, 319 Kan. 32, 41, 551 P.3d 1272 (2024).

Prosecutors have wide latitude to discuss the evidence and the law relevant to that evidence. *State v. Bodine*, 313 Kan. 378, 406-07, 486 P.3d 551 (2021). Even so, a prosecutor commits error when arguing a fact or factual inference without an evidentiary foundation. *State v. Waldschmidt*, 318 Kan. 633, 655, 546 P.3d 716 (2024); *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). If we find error, we determine whether the error prejudiced the defendant's due process rights to a fair trial. *State v. Gallegos*, 313 Kan. 262, 273, 485 P.3d 622 (2021). In doing so, we apply the constitutional harmless error inquiry set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this test, the State must prove beyond a reasonable doubt that the error did not affect the outcome of the trial. *Gallegos*, 313 Kan. at 273.

Here, even if we assume the State's argument was erroneous, we do not find that it denied Heider's right to a fair trial. In other words, our focus is on the effect—if any— that the error had on the jury's verdict. See *Sherman*, 305 Kan. 88, 110, 378 P.3d 1060 (2016). Based on our review of the record, we find that the State has met its burden to

11

show that there was no reasonable possibility that the prosecutor's argument contributed to the verdict.

We find that the argument was isolated when viewed in light of the entire record. The record shows that the State presented evidence to show that Navarro had changed her story throughout the course of the investigation and even claimed that she was the shooter even though the evidence did not support her claim. Moreover, the charges against Navarro were based on her lack of cooperation with law enforcement. These facts regarding Navarro's credibility were appropriately presented to the jury during the trial.

Also, we find that the district court properly instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded." In addition, the district court instructed the jury that it "must decide this case by applying these instructions to the facts as you find them" and that it was the jury's role to determine the weight and credit to be given to the testimony of each witness. See PIK Crim. 4th 50.070 (2012 Supp.); PIK Crim. 4th 50.040 (2012 Supp.).

Furthermore, the district court also instructed: "Your verdict must be founded entirely upon the evidence admitted and the law as given [in] these instructions." See PIK Crim. 4th 68.010 (2012 Supp.). Finally, the district court instructed the jury that the defendants have a constitutional right not to testify, and it must not draw an inference of guilt from the fact that the defendants did not testify in this case. See PIK Crim. 4th 51.080 (2022 Supp.). Absent a showing to the contrary, we presume that the jury followed those instructions given by the district court. *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023).

We find that the district court properly instructed the jury on its duty to evaluate the evidence and assess the credibility of each witness. The district court also properly instructed the jury that statements and arguments of counsel are not evidence. Given the totality of the evidence admitted at trial, we conclude that the prosecutor's argument did not affect the outcome of the trial in light of the entire record, and that there is no reasonable possibility that the prosecutor's statement contributed to the verdict.

*Reasonable Doubt Instruction*

In addition, Heider contends that the instruction given to the jury by the district court on reasonable doubt lessened the State's burden of proof to something other than the typical "beyond a reasonable doubt" standard. Specifically, he argues that the "no reasonable doubt" language used by the district court reduced the State's burden. In response, the State points out that this argument has been rejected by the Kansas Supreme Court.

Indeed, the Kansas Supreme Court rejected the same argument that Heider is making now more than 50 years ago. See *State v. Curtis*, 217 Kan. 717, 724-25, 538 P.2d 1383 (1975). In *Curtis*, our Supreme Court held:

> "We discern no practical difference in the effect or meaning of the terminology in question. Telling the jury that it cannot convict if a reasonable doubt remains as to any of the claims made by the state conveys the same meaning as to burden of proof as requiring proof beyond a reasonable doubt." 217 Kan. at 725.

Since 1975, this argument has been repeatedly rejected by both our Supreme Court and by this court. Likewise, we are duty bound to follow the precedent set by the Kansas Supreme Court unless there is some indication that it is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). We find no indication that our Supreme Court is departing from its precedent on this issue. See *State v. Beasley*,

13

64 Kan. App. 2d 203, 214, 547 P.3d 617, *rev. denied* 319 Kan. 834 (2024). Hence, we conclude that the district court did not err in instructing the jury on reasonable doubt.

*Cumulative Error*

Finally, Heider contends that he is entitled to a new trial based on a combination of errors. But as our Supreme Court has held, an unpreserved instructional issue that is not found to be clearly erroneous should not be considered in cumulative error analysis. *Waldschmidt*, 318 Kan. at 662. And when only a single error has been identified, cumulative error does not apply. *Gallegos*, 313 Kan. at 277. As a result, we conclude that Heider is not entitled to a new trial based on cumulative error.

Affirmed.